**JORDAN K. RAND, LTD., Plaintiff,**

v.

**LAZOFF BROS., INC., Defendant.**

**Civ. No. 81–2465(PG).**

United States District Court,
D. Puerto Rico.

April 6, 1982.

Iván Reichard, Reichard & Colberg, San Juan, P. R., for plaintiff.

Rodolfo Gluck, Hato Rey, P. R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This is an action brought by plaintiff against defendant for trademark infringement and for unfair competition pursuant to the Lanham Trademark Act, 15 U.S.C.

§§ 1051–1127, and the laws of Puerto Rico. Jurisdiction exists under 15 U.S.C. § 1121 and under 28 U.S.C. § 1338.

Plaintiff's complaint is in five counts. Count I alleges that Lazoff Bros., Inc.'s (hereinafter referred to as Lazoff) use of the Chardón trademark on the goods and merchandise sold by it constitutes infringement of the registered trademark Chardón owned by plaintiff, Jordan K. Rand, Ltd. (hereinafter referred to as Rand). Count II alleges that defendant's use of its trademark falsely attributes the origin of its product to plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and that Lazoff, by its use of Chardón Paris engages in unfair competition with plaintiff, appropriating to itself plaintiff's goodwill and reputation to the detriment of plaintiff and of the purchasing public who is confused thereby. Counts III and IV allege trademark infringement and unfair competition under Puerto Rican law, 10 L.P.R.A. § 191, et seq., and § 259, et seq. Count V alleges a breach of contract under the Civil Code of Puerto Rico.

Plaintiff is seeking a preliminary injunction to prevent Lazoff from using the trademark Chardón in connection with the advertising and sale of its products.

Defendant denied the complaint's allegations, raised several affirmative defenses, and counterclaimed against the plaintiff. The affirmative defenses are essentially that defendant had acquired an exclusive right to use the trademark Chardón in Puerto Rico and Venezuela; that defendant had lawfully registered the trademark Chardón in Puerto Rico; that plaintiff is precluded from enjoining defendant's exclusive right by equitable principles of laches, estoppel and acquiescence; and that plaintiff's ultimate purpose is to terminate a valid dealer's agreement without cause.

Defendant has counterclaimed against plaintiff alleging violation of the Puerto Rico Dealer's Act, 10 L.P.R.A. 278, et seq., and seeking (1) the Court to order the United States Patents and Trademark Office to register defendant's rights to the exclusive use of the trademark Chardón in Puerto Rico and Venezuela in connection with jeans and general apparel; (2) to award damages, costs and attorney's fees.

On February 25, 1982, the Court held a hearing on the preliminary injunction motion. After observing the demeanor and weighing the credibility of both witnesses, Messrs. Bob Gurevitch and Mike Lazoff, the Court accepts plaintiff's version of the facts and rejects defendant's testimony as unworthy of belief. On the pleadings on the proof adduced at the hearing and on the written briefs and affidavits, the Court makes the following findings of facts.

### The Factual Background
#### A. Plaintiff

Jordan K. Rand, Ltd., is a California corporation with its principal place of business therein and a designer of clothing who distributes in Puerto Rico, United States and foreign countries and also licenses the distribution and sale of jeans and other clothing bearing the trademark Chardón Paris since June 1980.

Plaintiff has its jeans and garments manufactured to its specifications and standards in factories throughout the world. It has spent 3.5 million dollars in advertising through television, radio, billboards, prints and posters.

On January 5, 1982, plaintiff obtained a registration from the United States Patent and Trademark Office (Plaintiff's Exhibit 14). From the registration it appears that the trademark application was filed on July 7, 1980, that its first use was on June 12, 1980, and that it is for men's and women's jeans. Plaintiff has also filed applications for registration of the Chardón trademark in Canada, Germany, Great Britain, Japan, Indonesia, Taiwan, Philippines and Venezuela. Registration in the Benelux countries has been issued. Moreover, plaintiff applied for registration of the Chardón trademark in Puerto Rico, but said application was denied because defendant had already had the trademark registered to its name. During the month of March 1980 plaintiff contacted defendant Lazoff about

the new line of jeans and commented to him that there was going to be a show in New York. Defendant went to New York where plaintiff was presented the new line of jeans.

During the months of May and June 1980 plaintiff and defendant conferred by telephone to set up a license agreement to distribute the jeans in Puerto Rico and Venezuela. Under this arrangement defendant would place orders for jeans with plaintiff at agreed prices and plaintiff would authorize the manufacture of said goods for defendant's account, to be released to defendant against a letter of credit. Defendant agreed to pay a royalty of $1.25 for every jean ordered. As a result of these communications, Mr. Bob Gurevitch, Vice President of Jordan K. Rand, Ltd., wrote a letter addressed to Mr. Mike Lazoff with date of July 9, 1980, wherein he states that he is detailing their agreement for Lazoff Bros.' license for the distribution of jeans in Puerto Rico with the trademark Chardón. The agreement (Exhibit 1) sets forth that "all jeans must be purchased through Jordan K. Rand, Ltd., and a royalty of $1.25 per unit is to be paid to Jordan K. Rand, Ltd." upon shipment; that Jordan K. Rand, Ltd., will provide T.V. commercials and art work for in-store display; that "Lazoff Bros. agrees to spend approximately 12% of jeans sales for T.V. advertising"; that "Jordan K. Rand, Ltd. must approve in writing any production of garments with the Chardón Paris trademark"; and that "the format for license royalties of any other products other then (sic) jeans will follow.".

Pursuant to the agreement, defendant obtained a line of credit from Citibank, N.A., (Defendant's Exhibit B). Defendant placed orders indicating the amount of different sizes it wanted to purchase, in person, in New York or in the offices of plaintiff in Los Angeles, California, or called in by phone. Plaintiff would then telex or would forward the order to its agent, East-West Trade Development Co. (hereinafter referred to as E–W Co.) in Hong Kong. E–W Co. would then place the order with the factories in different countries. The shipper was the factory that produced the goods, and the goods were then consigned to either the bank or defendant (Plaintiff's Exhibit 9). Plaintiff would then make the invoices for royalties after receipt of the copy of the commercial invoice from E–W Co. The royalties were due once the factory or E–W Co. shipped and the bank accepted the letter of credit and invoices. Ten checks appeared to be made by defendant to plaintiff in payment of royalties due to invoices from the Chardón jeans dated from October 28, 1980, to August 26, 1981 (Plaintiff's Exhibit 10). By November 12, 1981, defendant owed plaintiff the sum of $41,130.00, in royalties, due for invoices of the Chardón jeans (Plaintiff's Exhibit 17).

### B. *Defendant*

Lazoff Bros., Inc., is a corporation organized under the laws of Puerto Rico with principal place of business in Puerto Rico dedicated to the business of selling clothing at the wholesale level.

Lazoff, as licensee of plaintiff's trademark, carried out an extensive advertising program to promote Chardón jeans, which as of December 31, 1981, added up to $112,265.00. Defendant entered into a contract to lease a property in San José Shopping Center and invested $47,000 in repairs and improvements (testimony of Mr. Lazoff). He had three salesmen to sell the Chardón jeans. Defendant placed orders for plaintiff's jeans in the sum of more than one million dollars and paid $175,000.00 in royalties. The gross sales totalled 2.9 million dollars from the beginning of the agreement through 1981. Defendant testified that he has 30,000 Chardón jeans still in stock.

Defendant filed an application for registration of the trademark Chardón in the Department of State of Puerto Rico in July 1980, wherein it states that the trademark was adopted and used since June 1, 1980. Said application was approved on October 20, 1980, and the trademark was so registered (Plaintiff's Exhibit 16).

Defendant manufactured and sold garments other than the jeans manufactured by plaintiff under the trademark Chardón

and applied the trademark Chardón to those garments. Some of those garments were presented at the hearing as plaintiff's Exhibits 2 thru 7, and consisted of shirts, blouses, slacks and trousers, some made with polyester or low-quality fabric and styles out of line with the fashion of today and with the image of Chardón.

Defendant published in the newspaper in Puerto Rico, The San Juan Star, a note clarifying and informing the public that Lazoff Bros., Inc., had registered the trademark Chardón Paris (TM) under the certificate 23209, dated July 10, 1980, and that it was the only entity authorized to offer, distribute and sell the Chardón products in the territory of Puerto Rico, The newspaper notice was authorized by Lazoff Bros., Inc. (Plaintiff's Exhibit 15).

Defendant's version of the facts is as follows: that plaintiff and defendant entered into an oral agreement for the exclusive distribution in Puerto Rico and Venezuela of the jeans bearing the trademark Chardón; that defendant agreed to pay plaintiff a commission of $1.25 for every jean ordered by Lazoff, but that in no event such commissions would exceed $175,000.00; that defendant could use the trademark Chardón in other garments besides the jeans manufactured by defendants without the prior authorization or control by plaintiff and without paying any royalties or commissions.

We gave credibility to plaintiff's testimony as to the development of facts which resulted in its petition for preliminary injunction, and we discarded defendant's testimony as not credible. It is unreasonable to believe that the licensing agreement involved herein, or even assuming arguendo that it was not a licensing agreement but an exclusive distributorship agreement, would not be reduced to writing wherein plaintiff would permit defendant to use the trademark Chardón in Puerto Rico and where a lot of money would be expected to be involved therein. Furthermore, it behooves the Court that defendant only received the documents that are in accord with its theory of the facts of this case, but

that other evidence that is contrary to its position was not received although it was mailed to the same address as other documents received in the due course of business with plaintiff. Defendant alleges that it did not receive plaintiff's invoices for royalties of August and November 19, 1981, (Plaintiff's Exhibit 9) because plaintiff stopped invoicing defendant as soon as plaintiff received $175,000.00 in commissions. However, said invoices were mailed to the same address as the other invoices defendant received. Other documents which defendant did not receive but which were mailed to the same address as the invoices were the licensing letter (Plaintiff's Exhibit 1) and the collection letter (Plaintiff's Exhibit 17). If the relationship between plaintiff and defendant was so open-ended, as alleged by defendant, why then did it have to ask plaintiff's consent to ship a small quantity of plaintiff's jeans to a store in Miami?

Additionally, the Court can not accept Lazoff's claim that the agreement with plaintiff was that defendant could use the Chardón trademark in other garments produced by defendant without prior authorization or control by Jordan K. Rand, Ltd., and without any license royalties. To do so would amount to "uncontrolled licensing", which is defined in *Heaton Distributing Co. v. Union Tank Car Co.*, 387 F.2d 477, 485 (8 Cir., 1967) as where a trademark owner has licensed someone else to make or manufacture its products and then fails to control the quality of the products made by the licensee, thus, permitting a deception of the public. See *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 367 (2 Cir., 1959). Therefore, it is untenable to believe that Rand could have licensed Lazoff to manufacture products and affix the Chardón trademark. What Rand did was license Lazoff to sell plaintiff's Chardón jeans.

■ The Lanham Act places an affirmative duty upon a licensor of a registered trademark to take reasonable measures to detect and prevent misleading uses of his trademark by his licensees or suffer cancellation of his federal registration. 15 U.S.C.

§ 1064; *Dawn Donut Co. v. Hart's Food Stores, Inc., supra,* at 366. The reason for such duty is to sustain its original position of guarantor to the public that the goods bearing the trademark of Chardón are of the same nature and quality as before the license. See *Susser v. Carvel Corp.,* 206 F.Supp. 636 (S.D.N.Y., 1962) aff'd. 332 F.2d 505 (2 Cir., 1964).

 The exclusive right to use a trademark belongs to the first who appropriates it and uses it in connection with a particular business. *Armstrong Cork Co. v. Armstrong Plastic Covers Co.,* 434 F.Supp. 860 (E.D.Mo., 1977). It is undisputable that plaintiff was the first to use the trademark. The right to use a trademark is unaffected by failure to register, and not even the right to exclude is obtained from registration of the trademark. The ownership of a trademark is acquired by use not by registration. *Holiday Inn v. Holiday Inns, Inc.,* 534 F.2d 312 (Cust. & Pat.App., 1976).

 The registration of a trademark does not create or enlarge registrant's rights, and any rights belonging to alleged prior user which had been obtained prior to registration would not be extinguished. *Burger King v. Hoots,* 403 F.2d 904 (7 Cir., 1968). Thus, even assuming that defendant had filed a petition to register the Chardón trademark in Puerto Rico on July 10, 1980, which was approved on October 20, 1980, the same did not extinguish Rand's prior right to the use of such trademark.

"The ownership of a federal trademark registration simply supplements the rights accorded at common law which stem from the ownership of a trademark." *Time Mechanisms, Inc. v. Qonaar Corp.,* 422 F.Supp. 905 (D.N.J., 1976).

 Plaintiff had a legal right to establish a trademark and license it to others. Plaintiff, as the trademark owner of Chardón, could expand the territory in which it had the right to exclusive use of its trademark and create demand for its variety of goods in new territories by licenses subject to its control. However, the licensee acquires only the right to a limited use of the trademark and the control, right and title to the product remains in the licensor. *Denison Mattress Factory v. Spring-Air Co.,* 308 F.2d 403, 409 (5 Cir., 1962).

 A trademark licensor can proceed against the licensee while the license agreement is still in effect. *Franchised Stores of New York, Inc. v. Winter,* 394 F.2d 664 (2 Cir., 1968). If all the requisite elements of infringement and unfair competition are established, a trademark licensor may succeed in a trademark infringement action against one who is still his licensee.

*Conclusions of Law*

This Court has jurisdiction under 28 U.S.C. § 1338 and 15 U.S.C. § 1121 of this action of trademark infringement and unfair competition brought under the Trademark Laws of the United States, 15 U.S.C. § 1051, et seq., and pendent jurisdiction over the state law claims for trademark infringement and unfair competition.

 The trademark and unfair competition law of Puerto Rico is congruous with the common law principles developed by the federal courts. *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366 (1 Cir., 1980).

 This is not a case of an agreement between plaintiff and defendant for a concurrent use of a trademark pursuant to 15 U.S.C. § 1051, as alleged to by defendant, but a case of licensor-licensee. Defendant further alleges that as the sole and exclusive distributor of the trademark Chardón in Puerto Rico and as the result of its advertising and efforts the Chardón trademark is not associated with plaintiff in Puerto Rico, but with defendant. In support thereof, it cites the case of *Meem-Haskins Coal Corp. v. Central Fuel Corp.,* 30 CCPA 1285, 137 F.2d 242 (1943), which is not applicable to the facts of the case at bar and is even contrary to defendant's position.

*Meem-Haskins Coal Corp.* was a trademark opposition proceeding. Defendant therein, which was the exclusive sales agent for plaintiff, tried to find shelter but could not (precisely what defendant pretends to do in our case), within the line of cases

which support the principle that a salesman or distributor may, under certain circumstances, originate and have exclusive use and ownership of a trademark upon goods which he sells but does not produce. In the case at bar the trademark Chardón does not indicate the name of Lazoff as distributor of the merchandise rather than the name of the maker, Rand, so that the public would associate the goods so marked with Lazoff. The trademark is silent as to either the maker or distributor, but the public has become accustomed to regard the Chardón garments as coming from a single anonymous source.

■ A transfer of the beneficial rights to a trademark can be made from the manufacturer to an exclusive distributor. *Omag Optik Und Mechanik A. G. v. Weinstein*, 85 F.Supp. 631 (S.D.N.Y.,1949). In *Omag Optik Und Mechanik A. G.*, the facts were that the rights prior to the registration were in the manufacturer, which fact the distributor so conceded, and in spite of, the distributor registered the trademark in his own name contrary to the wishes of the manufacturer. Before the distributor can claim the full benefits of the registration under the facts presented, he must show a clear intention on the part of the manufacturer to transfer the trademark to the distributor. Even assuming arguendo that Lazoff was an exclusive distributor, the evidence clearly shows that plaintiff was without any such intention to transfer the trademark to defendant. The plaintiff relied on defendant only to sell its Chardón jeans in accordance with the relation established between the parties because defendant had already done business with plaintiff. Lazoff did not represent or suggest that it would claim ownership of the trademark. It is unreasonable to believe that plaintiff meant to transfer the Chardón trademark to defendant.

### Laches and Acquiescence

■ Lazoff has asserted the defenses of laches, acquiescence and estoppel to bar plaintiff's claim due to its knowledge of defendant's acts and failure to complain thereof. Although unreasonable delay may bar injunctive relief, *Scott Paper Co. v. Scotts Liquid Gold, Inc.*, 439 F.Supp. 1022 (D.Del., 1977), the defense of laches is reserved for those rare cases where a protracted acquiescence by plaintiff induces a defendant to undertake substantial activities in reliance on the acquiescence. *McNeil Laboratories, Inc. v. American Home Products Corp.*, 416 F.Supp. 804, 809 (D.N.J., 1976). Lazoff stated that plaintiff was aware of his marketing of jeans and other garments under the trademark Chardón in excess of eighteen months prior to filing the complaint. This statement is contradicted by Rand, who testified that on the latter part of the month of September 1981 it became aware of Lazoff's actions when it applied for registration of the trademark Chardón in Puerto Rico and it was declined because Lazoff already had it registered to its name. Thereafter, the complaint was filed on December 22, 1981, only three months after plaintiff became aware of defendant's act. That is not an unreasonable delay.

■ Moreover, the mere lapse of time does not constitute laches barring injunctive relief. See, *e.g., Carl Zeiss Stiftung v. VEB Carl Zeiss, Jena*, 433 F.2d 686, 704 (2 Cir., 1970), cert. denied 403 U.S. 905 (1971); *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614 (7 Cir., 1965).

■ Furthermore, estoppel by laches is not available as a defense to a defendant in a trademark infringement or unfair competition case where its own actions had been calculated to trade upon plaintiff's reputation. *Baker v. Simmons Co.*, 307 F.2d 458 (1 Cir., 1962); *National Lead Co. v. Wolfe*, 223 F.2d 195 (9 Cir., 1955), cert. denied 350 U.S. 883 (1955); *Cuban Cigar Brands N. V. v. Upmann International, Inc.*, 457 F.Supp. 1090 (S.D.N.Y., 1978).

Since we have concluded that Lazoff is not entitled to the defense of laches, estoppel or acquiescence to bar this preliminary injunction, we must decide if a preliminary injunction should issue.

## Preliminary Injunction Standards

To obtain preliminary relief, the moving party must show that it has reasonable likelihood of eventual success on the merits; that it will be irreparably injured if relief is not granted; that a balance of equities favor the plaintiff; and that the public interest would be served by issuing the injunction. *Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273 (1 Cir., 1981); *Grimard v. Carlston*, 567 F.2d 1171 (1 Cir., 1978). The Court shall consider plaintiff's motion in light of these considerations.

## Plaintiff's Claim of Statutory Trademark Infringement

■ It is well settled that likelihood of confusion is an essential element of both the claim for trademark infringement and unfair competition. See *Pignons S. A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482 (1 Cir., 1981); *Coca-Cola Co. v. Snow Crest Beverages, Inc.*, 162 F.2d 280, 283 (1 Cir.), cert. denied 332 U.S. 809 (1947); *De Costa v. Columbia Broadcasting System, Inc.*, 520 F.2d 499 (1 Cir., 1975), cert. denied 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1975).

■ In determining whether there is likelihood of confusion, the following factors are taken into consideration: the similarity of the marks; the similarity of the goods; the relationship between the parties' channel of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of plaintiff's mark. *Pignons S. A. de Mecanique v. Polaroid Corp., supra.*

■ (1) The similarity of the marks. An examination of defendant's mark in the garments establishes that defendant uses a very similar mark as plaintiff. Defendant uses two types of mark, in both, the words Chardón Paris appear in the same type of letter as used by plaintiff, but in one of them there appears the letter C on top of the name Chardón Paris. The words TM that appear in very small letters on plaintiff's mark after the word Chardón only appear once in defendant's garments, but it is an insignificant difference, the same as the slight difference in the color that exists between plaintiff's and defendant's marks. The dominant part of plaintiff's trademark is the word Chardón, which has been adopted by defendant as the dominant part in its marks. As stated in *Queen Mfg. Co. v. Isaac Ginsberg & Bros.*, 25 F.2d 284 (8 Cir., 1928).

"In order to constitute an infringement it is not necessary that the trademark be literally copied. Neither is it necessary that every word be appropriated. There may be infringement where the substantial and distinctive part of the trademark is copied or imitated." (Citations omitted)

■ (2) The similarity of the goods. Although identity of products is not required to prove likelihood of confusion, the greater the similarity between the products, the greater the likelihood of confusion. *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2 Cir., 1976). Both plaintiff and defendant are engaged primarily in the wide range of garment products.

(3) The relationship between Lazoff's and Rand's channel of trade.

(4) The relationship between the parties' advertising.

■ As factors three and four are interrelated, we consider them together. Confusion over the nature of the parties' business relationship may be as objectionable for purposes of trademark infringement as is confusion between their goods. *Pignons S. A. de Mecanique v. Polaroid Corp., supra*, at 490. It is not necessary to conclude that the public be led to believe that defendant's products are produced by the plaintiff. It is not even necessary that the public know who the plaintiff is. What is required is that the ordinary purchaser, generally familiar with plaintiff's mark, is likely to believe that defendant's products are somehow related to, associated with, or sponsored by the same people or entity that produces the actual Chardón garments. *Estate of Presley v. Russen*, 513 F.Supp. 1339,

1371 (D.N.J., 1981). The evidence indicates that the jeans produced by plaintiff were sold in Puerto Rico through a license agreement with defendant, and that the trademark Chardón at that time was not licensed to anybody else. The other garments produced by plaintiff with the Chardón trademark have been sold to retailers in the United States, but not in Puerto Rico. It is not at all unreasonable for the ordinary purchaser generally familiar with the trademark Chardón to believe that defendant's garments with the trademark Chardón are somehow related to, associated with or sponsored by plaintiff. There were two television commercials and posters provided to defendant by plaintiff. The other advertising was done by defendants, thus, fostering the belief that defendant's products are somehow related to plaintiff's products.

(5) The classes of prospective purchasers. Because defendant's products are garments, same as plaintiff's, it seems likely that it would appeal to many of the same members of the public who are interested and patronize plaintiff's products. There is a realistic likelihood that these consumers would be confused by defendant's production and advertising of its clothes.

■ (6) Evidence of actual confusion. In the present case there is no evidence of actual confusion, but it is not invariably necessary to a finding of likelihood of confusion. *Pignons S. A. de Mecanique v. Polaroid Corp., supra; Caesars World, Inc. v. Caesar's Palace*, 490 F.Supp. 818, 823 (D.N.J., 1980); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5 Cir., 1980), especially when a suit for injunctive relief from a competitor's use of a deceptively similar mark is brought at the incipiency of the alleged infringement. At that stage, plaintiff should not be expected to stand by and await the dismal of proof. *De Costa v. C. B. S., Inc., supra.*

(7) Lazoff's intent in adopting the mark. Given the lack of credibility as to defendant's testimony, together with the kind of relationship that existed between the parties, we can only conclude that defendant's selection of the Chardón mark for its gar-

ments can only be explained as a deliberate attempt to benefit and cash on the good will and on the strength of a reputation which attached to said Chardón mark established locally and nationally.

(8) The strength of plaintiff's mark. A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties. *Exxon Corp. v. Texas Motor Exchange of Houston*, 628 F.2d 500, 504 (5 Cir., 1980). Our review of the record leads us to assume that the Chardón trademark is distinctive and, thus, a strong trademark. There is no evidence in the record indicating that the said trademark is used by other parties besides plaintiff. "Stronger marks are accorded broader protection against infringement than are 'weak marks' ". *Pignons S. A. de Mecanique v. Polaroid Corp., supra*, at 492.

■ After weighing all the factors we have reached the conclusion that defendant's use of Chardón as trademark to identify defendant's garments creates a likelihood of confusion among potential consumers. Therefore, plaintiff has established the likelihood of its ultimate success on the merits of its infringement claim as to the Chardón trademark.

### Unfair Competition or False Designation of Origin

In addition to the trademark infringement claim, plaintiff claimed that Lazoff's use of the trademark Chardón constituted unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) provides:

"Any person who shall . . . use in connection with any goods or services . . . a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of such false description or representation."

The basis for an action under this section is use of a mark in interstate commerce which is likely to cause confusion or to deceive purchasers concerning the source of the goods. *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154 (1 Cir., 1977). Thus, as with trademark infringement, injunctive relief will be granted upon proof of likelihood of confusion as to the source of goods. The same facts supporting a suit for trademark infringement will support a suit for unfair competition. See, *e.g., Amstar Corp. v. Domino's Pizza, Inc., supra; New West Corp. v. N. Y. M. Co. of California, Inc.*, 595 F.2d 1194, 1201 (9 Cir., 1979); *James Burrough, Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 n.16 (7 Cir., 1976). Because we have already examined the likelihood of confusion as to the trademark Chardón in the trademark infringement claim, we do not find it necessary to make another similar examination as to the unfair competition claim.

### Immediate Irreparable Harm

A finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears. *Koppers Co., Inc. v. Krupp-Koppers Gmbh*, 517 F.Supp. 836 (W.D.Pa., 1981). This injury arises by depriving plaintiff of its ability to control the nature and quality of a product which the public believes it provides. Plaintiff's registered trademark Chardón is widely advertised and represents high quality clothing and substantial goodwill. Plaintiff has a significant stake in continuing to insure that the products identified by the Chardón mark maintain these standards. See, *e.g., Franklin Mint, Inc. v. Franklin Mint, Ltd.*, 331 F.Supp. 827 (E.D. Pa., 1971); *Villager, Inc. v. Dial Shoe Co.*, 256 F.Supp. 694, 698–99 (E.D.Pa., 1966).

Even if defendant matched the high quality of plaintiff's products, and the contrary appears to be true, plaintiff is still entitled to have its reputation within its control. *Ambassador East, Inc. v. Orsatti, Inc.*, 257 F.2d 79, 82 (3 Cir., 1958); *Louis Rich, Inc. v. Horace W. Longacre, Inc.*, 423 F.Supp. 1327 (E.D.Pa., 1976). In this case, an even more serious harm is the damage which will be done to the mark itself, to plaintiff's goodwill, an intangible value which can never accurately be ascertained. *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2 Cir., 1971); *Chips'N Twigs, Inc. v. Blue Jeans Corp.*, 146 F.Supp. 246, 248 (E.D.Pa., 1956); *Manpower, Inc. v. Womenpower, Inc.*, 288 F.Supp. 132 (D.C. P.R., 1968). The evidence establishes that defendant intends to continue manufacturing its garments with the trademark Chardón; thus, the Court recognizes the persistent and threatened impairment to the strength of plaintiff's mark and to its interest in having exclusive control over the symbol of its own reputation.

This Court also considered the possibility of harm to defendant from the grant of a preliminary injunction. Defendant argues that if it is preliminarily enjoined, "Lazoff would be deprived of reaping the trademark goodwill resulting from its time, efforts and investment, and plaintiff allowed to unjustly enrich by taking advantage of same". Thus, defendant seems to argue that because it has built up the reputation and goodwill of the trademark Chardón, it is entitled to trade on that reputation and goodwill in Puerto Rico notwithstanding any protection to which plaintiff is entitled. In *Koppers Co. Inc. v. Krupp-Koppers Gmbh, supra*, at 850, the Court's answer to the same argument by defendant therein was that "(t)his would leave plaintiff in the untenable position of having proven itself entitled to protection, but unable to receive relief". Defendant's predicament is the result of its own conduct. The record indicates that defendant commenced the manufacture and use of Chardón in garments other than the jeans supplied by plaintiff with full knowledge that the plaintiff used that trademark in the United States and foreign countries in jeans and other garments. Therefore, any loss in trade to the defendant is due only to the fact that defendant will no longer be using confusion to trade on the goodwill and reputation of the plaintiff. *Estate of Presley v. Russen, supra*, at 1381. The Court finds that the protection to which plaintiff is entitled out-

weighs any harm defendant may suffer from the grant of the preliminary injunction.

The balance of hardship favors plaintiff, which has at stake the alleged reputation of a brand name built up at enormous expense. If the defendant is not restrained pending trial, the alleged commercial significance of plaintiff's trademark will be undermined with resulting loss of trade and customer goodwill.

Moreover, defendant's interim use of the almost identical trademark would be contrary to public interest if consumers associate a trademark with one particular producer. Then the use of that mark by another producer will mislead the public regarding the source of the merchandise. See *Miller Brewing Co. v. Falstaff Brewing Corp.*, 503 F.Supp. 896 (D.R.I., 1980). Customer confusion is by its very nature against the public interest. *Teledyne Industries, Inc. v. Windmere Products, Inc.*, 433 F.Supp. 710, 740–41 (S.D.Fla., 1977).

### Breach of License Agreement

■ Plaintiff alleges as Count V of its complaint that defendant's acts constituted a breach of the license contract and that defendant should be compelled to pay the agreed royalties for the sales of the Chardón jeans provided by plaintiff. Defendant counterclaimed for infringement of an alleged dealer's contract executed pursuant to Puerto Rico's Act No. 75 of June 24, 1964, as amended, 10 L.P.R.A. § 278 et seq., known as Puerto Rico Dealer's Contract Act. Lazoff claimed that the principal dealer relationship existing between plaintiff and defendant was wrongfully terminated by plaintiff without just cause. Even assuming arguendo that the relationship between the parties is as described by defendant, that of exclusive distributorship, the evidence showed that defendant violated the agreement in failing to pay the royalties due on the Chardón jeans and in using the trademark Chardón on other garments without the prior approval of plaintiff and without paying any royalties for the same. The evidence further shows that such viola-

tions may adversely affect plaintiff's goodwill and reputation in the trademark Chardón. Therefore, even assuming that the agreement was protected under the Puerto Rico Dealer's Act, plaintiff had just cause for terminating the same. Defendant's counterclaim must be denied.

### Conclusion

For all the foregoing reasons, plaintiff's request for preliminary injunctive relief with respect to Chardón will be GRANTED, and defendant, Lazoff Bros., Inc., its agents, servants, employees and attorneys, and all persons in active concert or participation with them, are restrained and enjoined, pending final determination of this action, from the following:

1. Using in any manner, distributing, selling, offering for sale or advertising garments bearing the Chardón trademark and/or label or any other device which reproduces, counterfeits, copies or colorably initial plaintiff's trademark;

2. Committing any other acts calculated or likely to lead persons to the mistaken belief that any garment produced by defendant emanates from plaintiff or is sponsored by plaintiff, or is in any other way connected with plaintiff; and

3. Further distribution or sale of the jeans bearing the mark Chardón provided to defendant by plaintiff.

In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, the preliminary injunction herein entered is to become effective upon the plaintiff's giving security in the amount of Fifty Thousand Dollars ($50,000.00), to be approved by the Court, for the payment or such costs and damages as may be incurred or suffered by the defendant in the event that it is subsequently determined that the defendant has been wrongfully enjoined.

IT IS SO ORDERED.