**GEOFFREY, INC., Plaintiff,**

v.

**TOYS 'R US (NOSOTROS SOMOS LOS JUGUETES), INC., Robert Santiago, John Santiago and Angie Santiago, Defendants.**

**Civ. No. 90–2406 (JP).**

United States District Court,
D. Puerto Rico.

Feb. 4, 1991.

Iván Reichard, Reichard & Calaf, San Juan, P.R., for plaintiff.

Raúl Barrera Morales, Santurce, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it plaintiff's request for the entry of a preliminary injunction. This action was brought by plaintiff against the defendants for trademark infringement and unfair competition according to the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051–1127 ("Lanham Act"), and the laws of Puerto Rico. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338.

The complaint is in six counts. Count One alleges that defendants began doing business as TOYS 'R US, INC. long after plaintiff began to use its federally registered mark and their use of the mark therefore constitutes infringement because it is a "counterfeit mark" under 15 U.S.C. §§ 1114(1)(a) and 1116(d)(1)(B). The second count alleges that defendants' unauthorized use of the mark falsely designates or misrepresents the origin of its products sold as originating from plaintiff's marks and therefore appropriates the goodwill and reputation of plaintiff, and confuses the public, all in violation of 15 U.S.C. § 1125(a). The third and fourth counts claim trademark infringement and dilution under the applicable provisions of the Puerto Rico law. Count five asserts a claim for unfair competition under federal law, and count six alleges unfair competition and unfair and deceptive acts under Puerto Rico law, 10 L.P.R.A. § 259, *et seq.* Plaintiff seeks a preliminary injunction to prevent the defendants from using their Puerto Rico registered corporate name "TOYS 'R US, INC." in connection with the distribution, advertising and sales of its goods or services or holding out that the defendants' goods or services are in any way associated with the plaintiff. Also, plaintiff requests that defendants be ordered to amend the articles of incorporation to designate a new corporate name and to expunge all records in the Puerto Rico Department of State which include any reference to TOYS 'R US, INC.

## I. BRIEF PROCEDURAL HISTORY

Defendants in this case were ordered to appear on November 21, 1990, to show cause why a preliminary injunction should not be issued pending determination of this action pursuant to Rule 65 of the Federal Rules of Civil Procedure. The Court also ordered defendants to serve all answering papers, if any, upon the attorneys for the plaintiff, on or before 5:00 p.m. on November 16, 1990.

The hearing to consider plaintiff's motion for a preliminary injunction and to allow defendants to show cause why such preliminary injunction should not be issued was held as scheduled on November 21, 1990. The defendants did not appear. The codefendants, two of whom submitted themselves voluntarily to the jurisdiction of this Court, filed an answer to the complaint in December of 1989, denying most of the allegations in the complaint, and denying that plaintiff did not have knowledge of defendants' incorporation in Puerto Rico.

Based on the evidence submitted by the plaintiff, the testimony of plaintiff's witness, Guillermo Ricardo Alvarez, Area Director of the TOYS "Я" US stores in Puerto Rico, and after due deliberation, this Court now makes the following Findings of Facts and Conclusions of Law.

## II. FINDINGS OF FACT

■ 1. Geoffrey, Inc., is a corporation organized and existing under the laws of the State of Delaware, and is the owner of the following trademarks and service marks,[1] all registered with the United States Patent and Trademark Office:

a. Registration No. 902,125 TOYS "Я" US, registered on November 10, 1970. Exhibit 2, submitted during November 21, 1990, Hearing.

b. Registration No. 1,399,419 TOYS "Я" US, registered on July 1, 1986. *Id.*

c. Registration No. 1,531,202 TOYS "Я" US, registered on March 21, 1989. *Id.*

d. Registration No. 1,554,261 KIDS "Я" US, registered on August 29, 1989. *Id.*

e. Registration No. 1,405,364 PORTRAITS "Я" US, registered on August 12,

---

**1.** Service marks and trademarks are similar, although there are certain distinctions between them. The trademark is a mark used to distinguish the markholder's goods from those goods made by others, and a service mark is used to distinguish the markholder's services from those services offered by other parties. Both are used to designate the distinctive source of goods or services, even if that source is unknown. *See Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 23 n. 1 (1st Cir.1989); *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 815 n. 1 (1st Cir.1987) (citing 15 U.S.C.A. § 1127). This opinion will refer to them collectively as "marks," to include both trademarks and service marks. 15 U.S.C.A. § 1127 (1983).

1986. Plaintiff's Verified Complaint, Exhibit G.

f. Registration No. 1,413,778 COMPUTERS "R" US, registered on October 14, 1986. *Id.* Exhibit H.

g. Registration No. 1,473,595 MATHEMATICS "R" US, registered on January 19, 1988. *Id.* Exhibit I.

h. Registration No. 1,554,613 I'M A TOYS "R" US KID!, registered on September 5, 1989. Exhibit 2, submitted during November 21, 1990 hearing.

2. TOYS "R" US is an international specialty retailer with stores throughout the United States and the world. These stores specialize in retail sales of toys, games, novelties, children's jewelry, children's clothing, computers, and numerous other products, and carry over 18,000 different items.

3. Plaintiff, Geoffrey, Inc. is a wholly owned subsidiary of TOYS "Я" US Corporation, which licenses the TOYS "Я" US mark to TOYS "Я" US stores.

4. The TOYS "Я" US trademark and service mark have been used in commerce continuously since at least as early as 1960.

5. Annual worldwide sales of TOYS "Я" US are in excess of $4.8 billion dollars.

6. During the first eight months of fiscal year 1990, TOYS "Я" US spent in excess of $700,000.00 in advertising.

7. TOYS "Я" US began operations in Puerto Rico on November 17, 1989, when it opened its first store in Carolina, Puerto Rico. A second store was opened on December 1, 1989, at Plaza Las Américas. Both stores use the name TOYS "Я" US. Before opening for business in Puerto Rico, TOYS "Я" US conducted an intensive advertising campaign, informing the public of its plans to operate in Puerto Rico.

8. TOYS "Я" US engages in intensive newspaper, radio, and television advertising for its stores in Puerto Rico.

9. On October 28, 1987, codefendants John Santiago, Robert Santiago and Angie Santiago, appearing as incorporators, filed the certificate of incorporation for codefendant TOYS 'R US (NOSOTROS SOMOS LOS JUGUETES), INC., with the Department of State of the Commonwealth of Puerto Rico. On the registration form, these codefendants appeared as officers of the corporation: Robert Santiago as President, John Santiago as Treasurer, and Angie Santiago as Secretary. The Domestic Corporation Report for Puerto Rico lists the name of defendants' corporation as "TOYS 'R US, INC." *See* Exhibit 1, submitted during November 21, 1990, Hearing.

10. Defendants' articles of incorporation state that the name of the corporation shall be TOYS 'R US, (NOSOTROS SOMOS LOS JUGUETES), INC., and that it was created for the purpose of engaging in the business of importing, manufacturing, distributing and selling all kinds of toys, Christmas cards, and accessories. *Id.* Defendant corporation does business under the corporate name of TOYS 'R US (NOSOTROS SOMOS LOS JUGUETES), INC. Defendant's Answer to Complaint.

11. Plaintiff did not authorize nor approve the defendants' use of its marks for defendants' corporate name.

12. Defendant registered the name TOYS 'R US (NOSOTROS SOMOS LOS JUGUETES), INC., in Puerto Rico after plaintiff registered several of its TOYS "Я" US marks with the U.S. Patent and Trademark Office.

13. Because of defendants' aforesaid use of and incorporation under the name "TOYS 'R US, INC." in Puerto Rico, plaintiff could not use its federally registered mark "TOYS "Я" US" as its corporate name when it registered to do business in Puerto Rico with the Puerto Rico Department of State. Testimony of Guillermo Ricardo Alvarez.

## III. CONCLUSIONS OF LAW

The standard in the First Circuit for granting preliminary injunctive relief requires the plaintiff to show the following:

1. reasonable likelihood of success on the merits;

2. irreparable harm if preliminary relief is not granted;

3. the balance of hardships tips in favor of granting the requested relief;

4. the public interest will not be adversely affected by issuing the preliminary injunctive relief.

*See Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258 (1st Cir.1987); *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981); *Jordan K. Rand Ltd. v. Lazoff Bros., Inc.*, 537 F.Supp. 587, 595 (D.P.R.1982). We shall review plaintiff's request for preliminary relief in light of these criteria and the law of trademarks and unfair competition.

## A. LIKELIHOOD OF SUCCESS ON THE MERITS

### 1. Plaintiff's Claim of Statutory Trademark Infringement

It is well settled that a trademark right is not acquired by registration, but rather by use; the property right originates in common law by prior appropriation and use. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (1st Cir.1980); 4A R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies* § 25.03 (4th ed. 1983) (citations omitted) (hereinafter Callman). Under the common law, the exclusive right to use a trademark belongs to the first who appropriates it and uses it in connection with a particular line of goods. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 815 (1st Cir.1987) (citation omitted); *Armstrong Cork Co. v. Armstrong Plastic Covers Co.*, 434 F.Supp. 860 (E.D.Mo.1977). *See also* 7 J. Kalinowski, *Antitrust Laws and Trade Regulation* § 59.02[3][ii] (citing *Trademark Cases*, 100 U.S. 82, 94, 25 L.Ed. 550 (1879)). Congress enacted the Lanham Act in order to create national protection for trademarks used in and affecting interstate commerce. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193–94, 105 S.Ct. 658, 661, 83 L.Ed.2d 582, 587 (1985). Although the Lanham Act does not create the trademark right, it creates a body of federal trademark law, some of which varies from the common law and affords the trademark owner greater protection than the common law. 4A Callman § 25.03.

In this case, plaintiff is clearly the senior user of the marks in issue. As stated above, plaintiff began to use the trademark TOYS "Я" US in commerce as early as 1960. *See* Registration Nos. 902,-125, 1,215,353, Exhibit 2; Findings of Fact No. 4. Also, 15 U.S.C. § 1115(a) provides that the registration of a mark on the principal register constitutes prima facie evidence of the validity of the registered mark and the owner's exclusive right to use the registered mark in commerce on the goods or services specified in the registration. This prima facie evidence may be rebutted by proving certain legal or equitable defenses or defects such as fraud or abandonment of the mark. 15 U.S.C.A. § 1115(b). Plaintiff's several TOYS "Я" US trade and service marks were registered before defendant registered its corporate name with the Department of State of the Commonwealth of Puerto Rico in October of 1987.[2] These registrations are therefore prima facie evidence of plaintiff's ownership in the mark and its exclusive right to use the TOYS "Я" US mark.

Moreover, once plaintiff registered its TOYS "Я" US marks, defendants were put on constructive notice of plaintiff's claims of ownership in the registered marks. 15 U.S.C. § 1072. The effect of this constructive notice is that the use of a mark which is the same or confusingly similar to plaintiff's mark, as stated in its federal registration certificate, cannot be justified by a claim of innocence, good faith or lack of knowledge on the part of a junior user. *Davidoff Extension S.A. v. Davidoff Comercio E. Industria Ltda.*, 747 F.Supp. 122, 127 (D. P.R.1990). Once the registration is effected, national protection is afforded and "no subsequent adoption and use of the same or a similar mark for the same or similar goods can be justified on a

---

**2.** Registration No. 902,125, for the TOYS "Я" US trademark for the general line of children's toys and toy novelties was registered on November 10, 1970, and Registration No. 1,399,419 for the

TOYS "Я" US trademark for other lines of goods was registered on July 1, 1986. The TOYS "Я" US service mark, Registration No. 1,215,353, was registered on November 2, 1982.

claim of good faith." *Id.* at 127 (citing 4A Callman § 25.04).

15 U.S.C. § 1114(1)(a) provides that any person who, without the consent of the trademark owner:

> use[s] in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use *is likely to cause confusion, or to cause mistake, or to deceive*
>
> *    *    *    *    *    *
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

(Emphasis supplied.)

Section 1116(d)(1)(B)(i) defines a counterfeit mark as a "counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."

The likelihood of confusion is the main element of a trademark infringement claim. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482 (1st Cir.1981). Thus, in order to prove that defendants' actions constitute use of a "counterfeit" mark within the meaning of the Lanham Act, plaintiff must prove the likelihood that its registered mark will be confused with the goods and services provided by defendants under their corporate name. Likelihood of confusion is established by considering the following factors: the similarity of the marks; the similarity of the goods; the relationship between parties' channel of trade, the parties' advertising, and the classes of prospective purchasers; the evidence of actual confusion; the defendant's intent in adopting its mark; and the strength of plaintiff's mark. *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 29 (1st Cir.1989)(quoting *Volkswagen-*

*werk Aktiengesellschaft*, 814 F.2d at 817); *see also Jordan K. Rand Ltd. v. Lazoff Bros., Inc.*, 537 F.Supp. at 595.

(1) Similarity of the marks and the goods. In this case, defendants registered corporate name TOYS 'R US (NOSOTROS SOMOS LOS JUGUETES), INC., (emphasis added), the name it does business under includes the federally registered mark of plaintiff "TOYS "Я" US, Inc. and is almost identical to the mark.[3] Moreover, the kind of goods which each party sells are identical: plaintiff's Register No. 902,125, lists the use of the trademark as "general line of children's toys and toy novelties." Defendant's Domestic Corporation Report filed with the Puerto Rico Department of State lists the object of the business as "sale of toy and other miscellany." (Translation ours). Thus, it is likely that purchasers would be confused between the trademarked goods sold by the plaintiff and goods sold by the defendant, who uses plaintiff's trademarked name as its corporate name.

(2) Relationship between plaintiff's and defendants' channel of trade, advertising and classes of prospective customers. Because the relationship between the parties' channels of trade, advertising and classes of prospective purchasers are interrelated, we consider them together. *Volkswagenwerk*, 814 F.2d at 818. The plaintiff's Register No. 1,215,353, for the service mark TOYS "Я" US lists the use as "retail department store services." Exhibit 2. The defendants' certificate of incorporation lists the purposes of the company as the importation, manufacture, distribution, and wholesale and retail sale of educational and recreational toys for all ages, Christmas cards and other Christmas articles, and miscellany. (Paraphrasing ours.) The parties sell the same type of goods in Puerto Rico and both would advertise in Puerto Rico. Consequently, the same Puerto Rican purchaser would be interested in both the plaintiff's and defendants' goods and stores, and the ordinary purchaser who is generally familiar with plaintiff's TOYS

---

**3.** Plaintiff's mark contains a reversed "r" surrounded by quotation marks ("Я"), while defendant's corporate name contains an apostrophe before a regularly positioned R ('R).

"Я" US marks, would be likely to believe that the products sold by the defendants are somehow related to, associated with, or sponsored by the same company or entity that produces the TOYS "Я" US line of goods or services the retail department stores. *Jordan K. Rand Ltd.*, 537 F.Supp. at 596.

■ (3) Actual Confusion. Although there is no evidence of actual confusion in the instant case, actual confusion is not always necessary to finding likelihood of confusion. *Pignons S. A. de Mecanique de Precision*, 657 F.2d at 489; *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263, *reh'g denied*, 617 F.2d 295, (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

(4) Intent in adopting mark. Defendants have admitted that the defendant corporation does business under the corporate name of TOYS 'R US (NOSOTROS SOMOS LOS JUGUETES), INC., although they contend that they need not obtain plaintiff's authorization to use it. As noted above, the effect of plaintiff's federal registration was to impose constructive notice upon all persons, including defendants, of plaintiff's ownership of the marks. 15 U.S.C. § 1072. When the defendants used the TOYS 'R US, INC. name for their registered corporate name and for the name to conduct business under, they were on constructive notice of plaintiff's federal registration of the marks. As section 1072 affords the plaintiff national protection of its registered mark, regardless of the area in which it is used, and defendants, junior users, cannot justify their later use by claiming innocence, good faith or lack of knowledge, *Davidoff Extension S.A.*, 747 F.Supp. at 127–28, we conclude that defendants' intentional adoption of plaintiff's mark is not determinative of likelihood of confusion in this case.[4]

(5) Strength of the mark. Based on the fact that the TOYS "Я" US marks have been used in commerce continuously since at least as early as 1960, the annual world-wide sales of products bearing the assorted TOYS "Я" US marks or sold by the TOYS "Я" US stores are in excess of $4.8 billion dollars, and plaintiff's various federally registered marks, we support plaintiff's contention that its mark is well known. Thus, because strong marks are given broader protection against infringement than weak marks, *Pignons S.A.*, 657 F.2d at 492, and because of the other factors discussed above, plaintiff has demonstrated that it will probably succeed on the merits of its trademark infringement action against defendant for defendants' wrongful use of plaintiff's mark.

2. Plaintiff's Unfair Competition or False Designation of Origin Claim

■ Plaintiff also states a cause of action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for unfair competition or false designation of origin. Section 43(a) provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Because the basis for an action under this section is use of a mark which is likely to cause confusion or deceive purchasers concerning the source of goods, *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154 (1st Cir.1977), injunctive relief will be granted upon proof of likelihood of confusion as to the source. Thus, the same facts supporting a suit for trademark in-

---

**4.** Further, we note that intent is not relevant in deciding whether a mark is counterfeit since 15 U.S.C.A. § 1116(d)(1)(B)(i) states that a mark may be counterfeit "whether or not the person against whom relief is sought knew such mark was so registered."

fringement will support a suit for unfair competition or false designation of origin. *Jordan K. Rand, Ltd.*, 537 F.Supp. at 597.

Finally, a state agency's acceptance of a corporate name is not given any weight as a defense in an action for trademark infringement or unfair competition. *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 640 n. 7 (D.C.Cir.1982); *American Automobile Association v. AAA Insurance Agency, Inc.*, 618 F.Supp. 787, 797 (W.D.Tex.1985). *See also Magic Pan, Inc. v. Magic Pan, Inc.*, 185 U.S.P.Q. 528 (S.D. Ind.1975).

In short then, plaintiff has demonstrated that it has superior rights over the TOYS "Я" US mark and that it will probably succeed on the merits of this case.

### B. IRREPARABLE INJURY OF THE PLAINTIFF

Because plaintiff's marks are well known and well advertised, the plaintiff has created a significant goodwill in these marks. Consequently, it has a great interest in ensuring that the services and goods associated with the TOYS "Я" US mark maintain its well-established reputation.

Irreparable harm ordinarily follows once likelihood of confusion as to source or sponsorship has been established. *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir.1987); *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1220 (9th Cir.1987). The injury to the plaintiff in this case arises from its inability to control the nature and the quality of the products or services associated with the TOYS "Я" US marks that the purchasing public believes the plaintiff is providing. The harm is irreparable because defendants' use of plaintiff's marks as its corporate name places plaintiff's reputation and goodwill beyond its control, even though the plaintiff has not shown any loss of business. *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir.1988). Furthermore, plaintiff has suffered. According to the testimony of Guillermo Ricardo Alvarez, Area Director of plaintiff's TOYS "Я" US stores in Puerto Rico, plaintiff has already been forced to register to do business in Puerto Rico under a name different from TOYS "Я" US and as a result, has incurred certain expenses.

In short then, if a preliminary injunction is not issued, plaintiff's reputation will be adversely affected, and consumers will continue to believe that defendants' services and goods sold under its corporate name are sponsored or approved by the plaintiff.

### C. THE BALANCE OF HARDSHIP

The injunctive relief sought by the plaintiff will not close down defendants' business. It will merely require them to use a corporate name that does not cause confusion with plaintiff's marks. However, the irreparable injury that the plaintiff has already sustained as a result of the intangible damages done to plaintiff's marks—the symbols of the reputation and goodwill it has developed throughout the years—will continue in the future. These damages can never be accurately ascertained. *Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971). Thus, plaintiff's interest in preventing the potential injury it would suffer in the future outweighs the inconvenience defendants would experience if plaintiff's request for injunctive relief is granted.

In addition, the defendants began to use the plaintiff's mark after the plaintiff had used and registered its marks in commerce, so that the defendants should not be able to trade on the reputation and goodwill that the plaintiff has invested in and maintained. Therefore, the Court concludes that the balance of hardship tips in favor of the plaintiff, which has built the reputation and goodwill of the TOYS "Я" US name at great expense and has much to lose if the quality of the goods and services associated with that name were compromised. Failure to restrain the defendant from the use of plaintiff's well-established mark will create a loss of trade and customer goodwill which plaintiff has strived to build.

### D. THE PUBLIC INTEREST WILL BEST BE SERVED BY GRANTING THE REQUESTED INJUNCTION

Finally, the public and consumers have a right not to be deceived nor con-

fused by defendants' acts of infringement. Unless restrained, defendants will continue to sell toys and similar goods under the TOYS 'R US, INC. name and will cause consumers and the public to believe that they are dealing with the plaintiff when in fact they are not. This type of consumer confusion is, by its very nature, against the public interest. *Jordan K. Rand, Ltd.*, 537 F.Supp., at 598. Therefore, the issuance of a preliminary injunction will serve the public interest in this case.

In conclusion then, plaintiff has satisfactorily shown that it is entitled to preliminary injunctive relief.

### E. INJUNCTIVE RELIEF

Based upon the foregoing Findings of Fact and Conclusions of Law it is hereby ORDERED:

1. Defendants TOYS 'R US (NOSOTROS SOMOS LOS JUGUETES), INC., ROBERT SANTIAGO, ANGIE SANTIAGO, and JOHN SANTIAGO and their officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them, are restrained and enjoined, pending final determination of this action, from engaging in any of the following acts:

a. using the mark TOYS "Я" US, or any confusingly similar designation, word, translation, name or symbol alone or in combination with other words, as a trademark, service mark, trade name, trade name component, corporate name, corporate named component, or otherwise, to market, promote, distribute, advertise, or identify said defendants' goods or services, and,

b. holding out in any manner whatsoever that Defendants or Defendants' services or products are in any way sponsored by, or associated or affiliated with Plaintiff.

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, plaintiff is directed to provide security in the amount of $50,000.00.

It is further ORDERED that this injunction shall not become effective until after plaintiff provides the above security and the Court approves it.

IT IS SO ORDERED.