**VERYFINE PRODUCTS, INC., Plaintiff,**

v.

**COLÓN BROTHERS, INC., Defendant.**

Civ. No. 92–1197 (JP).

United States District Court,
D. Puerto Rico.

Aug. 31, 1992.

Pedro J. Santa Sánchez, O'Neill & Borges, Hato Rey, P.R., Robert M. Mendillo, Gary L. Kemp, Casner & Edwards, Boston, Mass., for plaintiff.

John F. Nevares, Saldaña, Rey, Morán & Alvarado, Santurce, P.R., Francisco M. López Romo, Old San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

Plaintiff Veryfine Products, Inc. ("Veryfine") has filed the instant case under the provisions of the Lanham Act, 15 U.S.C. §§ 1051–1127, seeking equitable and monetary relief against defendant Colón Brothers, Inc. ("Colón"). Veryfine alleges that certain fruit juices and fruit juice drinks which Colón is selling in 10–oz. bottles in Puerto Rico and elsewhere in the Caribbean under the "Coloso" brand, have labels which display graphic designs which are nearly identical to and a colorable variation of Veryfine's grapefruit design, orange design, pineapple-orange design and pineapple design trademarks, which have been registered with the U.S. Patent and Trademark Office. The Coloso products of which Veryfine complains are its bottled grapefruit juice, orange juice, pineapple-orange drink, pineapple juice and pineapple-guava drink. Veryfine claims that Colón's use of the Coloso fruit designs on the mentioned fruit juices and fruit product lines is likely to cause confusion or mistake or deception among purchasers as to the source or origin of its goods. Veryfine claims that Colón's conduct constitutes prohibited infringement of Veryfine's trademarks. Veryfine further claims that Colón has appropriated additional elements of Veryfine's trade dress for its 10–oz. fruit juice and fruit juice drinks which constitute a false designation of origin. Veryfine avers that said conduct is likely to deceive customers and prospective customers into believing that Colón's single-serve grapefruit juice, orange juice, pineapple-orange juice, pineapple juice and pineapple-guava juice products are those of Veryfine. Veryfine claims that Colón's conduct violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Claims of unfair competition under Puerto Rico law and common law trademark infringement are also asserted in the complaint.

The defendant contends that the fruit graphic design and the trade dresses of the Colón "Coloso" brand, 10–ounce bottled fruit juices and drinks are clearly distinctive and different from those utilized by Veryfine in its 10–ounce, bottled fruit juices and drinks, precluding any likelihood of confusion, mistake and/or deception between the Colón and Veryfine fruit juice and drink products and/or their source of origin.

In its complaint, Veryfine prayed for the issuance of a preliminary injunction and a permanent injunction, restraining Colón and others from infringement of Veryfine's trademarks, from dilution of Veryfine's trademark rights, from false designation of origin of Colón products, from injuring Veryfine's business reputation and from unfairly competing with Veryfine's trade practices. Veryfine also prays that Colón be required to account to Veryfine for Colón's profits and to pay the damages suffered by Veryfine as a result of Colón's acts, as well as for an award of treble

damages. Veryfine further prays that Colón be ordered to surrender for destruction all products, name plates, labels, packaging, advertisements and other materials constituting infringement of Veryfine's designation of origin and infringement of Veryfine's U.S. trademark registrations, as well as for imposition of attorneys' fees and costs. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). In addition, this Court has jurisdiction under 28 U.S.C. § 1332(a), as there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of Fifty Thousand Dollars ($50,000.00), exclusive of interest and costs.

Pursuant to Fed.R.Civ.P. 52(a), and after a consolidated preliminary and permanent injunction hearing held on July 10–11, 1992, the Court now makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Plaintiff, Veryfine Products, Inc. ("Veryfine"), is a family-owned Massachusetts corporation that has been in business since 1900.[1]

2. Veryfine sells approximately 25 flavors of fruit juices and fruit drinks, primarily packaged in 10–oz., 16–oz., and 32–oz. glass bottles, and 11–½–oz. aluminum cans. Veryfine sells its products to distributors, who in turn sell to outlets that sell the drinks to consumers one at a time (i.e. single-serve market).

3. Veryfine's exclusive distributor in Puerto Rico is Food & Spirits Distributing Corporation ("Food & Spirits"), a division of Bacardi Corporation.

4. The Veryfine name has been used since the early 1900's and has been in very wide use since the late 1950's.

5. In 1975, Veryfine was called New England Apple Products Company Incorporated. Its primary market was in the New England states. Its main products were cider vinegar, apple juice, apple cider, and a line of apple sauces. Veryfine had approximately 100 employees and annual sales of about $7 million.

6. In 1975, Veryfine underwent two radical changes in its business. The first was that Veryfine, in conjunction with its principal glass supplier at the time, Owens–Illinois, refined a 10–oz. soft drink package for its fruit juice products. Veryfine introduced eight flavors of juices and juice drinks in its 10–oz. package. Veryfine was the first company to sell juice and juice drinks in 10–oz. bottles. It is the 10–oz. glass bottle packages of Veryfine and Colón Brothers, Inc. which are at issue in this action.

7. The second change was that Veryfine dramatically altered the trade dress of its products. Veryfine went from an old, New England-looking label to a revolutionary, stylized graphic look. This extended not only to Veryfine's single-serve products (the 10–oz. glass bottles), but also its large size apple juice, apple sauce, and vinegar.

8. In changing its trade dress, Veryfine eliminated the previous graphic look in its product line. Veryfine decided to create a more unified look for its entire product line. This was done by the Saleme Design ("Saleme") firm of Newton Falls, Massachusetts. Saleme was then and continues to be one of the leading package graphics and corporate identity design firms in the United States.

9. Saleme developed a bold brand name using "Cooper Bold Typeface." For Veryfine's corporate identity and its package graphics, Saleme created a stylized fruit logo for its apple juice, and, other fruit graphics applicable to its other flavors. This new logo extended not only to bottle labels, but all aspects of Veryfine's business, i.e., its fleet of delivery trucks, stationery, checks, pens, and promotional support materials. It appeared virtually everywhere that the Veryfine name appeared. In essence, Veryfine developed a new unified corporate logo. In 1976, "Fleet Own-

---

**1.** Findings 1 through 22 are based upon the trial testimony of Veryfine's Vice President of Marketing, Steven Rowse.

ers" magazine gave an award to Veryfine for the new logo on its trucks.

10. As a result of creating the 10–oz. bottle business and developing a new corporate logo, Veryfine went from sales of $7 million in 1975 to over $200 million in sales in 1991. Moreover, it went from being a regional company to an international one selling in all 50 states, Puerto Rico, many of the Caribbean Islands, the Pacific Rim, and a few other export markets. Not only did Veryfine increase its business dramatically, it revolutionized the juice business by creating the 10–oz. juice market.

11. Veryfine's worldwide sales were $190 million in 1989, $205 million in 1990, and over $220 million in 1991. Veryfine has been selling in Puerto Rico since approximately 1983; it is one of Veryfine's best markets. Its Puerto Rico sales were $2.5 million in 1989; $3.5 million in 1990; and $4.5 million in 1991.

12. Veryfine products are available in various outlets throughout the United States: supermarkets, convenience stores, gas stations with convenience stores, tens of thousands of vending machines, drug stores, discount stores, business cafeterias, and lunch trucks. In many markets Veryfine is available virtually anywhere one can buy something cold to drink. Veryfine's distribution pattern in Puerto Rico is similar to its distribution pattern in the mainland United States: supermarkets, small stores, vending machines, and cafeterias.

13. The consumer cost of a single-serve bottle of Veryfine beverage in Puerto Rico ranges from $0.50 in supermarkets to $1.00 in airports and other high-priced venues. The wholesale price of a case of 10–oz. drinks ranges from $10–$15.

14. The juice business in the United States involves annual sales of over $11 billion. Veryfine is the eighth largest fruit juice company in the country.

15. Concerning the 10–oz. single-serve market, Veryfine created the market and since 1975 numerous competitors have followed Veryfine into this market. Veryfine has dozens of competitors in the United States. In supermarkets Veryfine is the leading 10–oz. brand sold in the country.

It has twice the market share of Tropicana, which is its next closest competitor. In convenience stores, Veryfine has a 40% share of the 10–oz. juice market, which gives it approximately a 10 share point lead over its nearest competitor, Tropicana. Veryfine has the greatest sales volume of all juice brands sold through vending machines.

16. Veryfine has numerous competitors in Puerto Rico as well. Veryfine is the leading seller of single-serve juices and drinks on the island by almost a 2–1 margin over Welch's, which is the second ranked brand.

17. Veryfine has traditionally engaged in expensive and successful advertising campaigns. It has historically used television as the principal medium to advertise its products in the United States and Puerto Rico, and has occasionally used radio and billboards. Since 1986, Veryfine has spent approximately $50 million worldwide on advertising. In 1991, Veryfine spent approximately $7 million. As far as Puerto Rico is concerned, Veryfine spent about $150,000.00 for advertising in 1990, and $175,000.00 in 1991. About 90% of Veryfine's advertising budget in Puerto Rico is for television commercials. Veryfine advertises on local channels, and cable channels from Chicago, Boston, and New York which are available to Puerto Rico viewers. The commercials which run on the stateside superstations are all in English, and the commercials which run on local channels are in Spanish. In the last two years, Veryfine television commercials reached over 90% of Puerto Rico adults 18–34 years old, which is its principal consumer audience. The ads have been seen by over 90% of those people on an average of at least 25 times.

18. During the trial, Veryfine played for the Court four 30–second television commercials which have won awards and were of a very high quality. Advertising Age magazine in 1990 found their quality of ads comparable to those used by Coca-Cola and Pepsi Cola.

19. The fruit graphic designs displayed on the labels at issue in this action are registered in the U.S. Patent & Trademark Office. Veryfine's trademarks are:

(a) a grapefruit design, Registration No. 1,247,270 (Aug. 2, 1983);

(b) an orange design, Registration No. 1,247,271 (Aug. 2, 1983);

(c) a pineapple and orange design, Registration No. 1,486,408 (April 26, 1988); and

(d) a pineapple design, Registration No. 1,491,394 (June 7, 1988).

Veryfine has also registered numerous other trademarks with that office. It has registered virtually all of its trademarks and has approximately 25 registrations. Moreover, Veryfine has also registered its "Veryfine" and "Apple Design" trademarks in the Commonwealth of Puerto Rico.

20. Virtually every element of the Coloso label, with the exception of the actual brand name itself, are very similar to the Veryfine labels: the colors are very similar; the stylized fruit graphics are very similar to Veryfine's registered fruit graphic trademarks; the major elements on the label are virtually in the exact same place; and both companies use the same 10-oz. bottle, with the same cap, and a similar product inside. (Testimony of Steven Rowse).

21. Through the years, Veryfine has also protected its marks by sending out cease and desist letters to companies that Veryfine found were infringing on its trademarks. Joint Exhibits L and LI.

22. On November 13, 1991, Veryfine, through counsel, sent Colón's president, José Colón, a cease and desist letter asking Colón to refrain from using allegedly infringing labels and trade dress. On November 25, 1991, Mr. Colón responded and said that he would not cease and desist, and noted that Veryfine had a 50% share of the market in the Caribbean. Subsequently, on February 14, 1992, Veryfine commenced this action.[2]

23. Veryfine's products are distributed to over 2,500 clients in Puerto Rico. These include 436 vending machines, 65 convenience stores, 243 supermarkets, 773 small groceries, 507 cash-and-carry, 492 cold market clients, and 406 schools and associations. There is also an additional large number of clients who obtain Veryfine products through a Coca–Cola distribution system. As of January 1991, Food & Spirits had approximately 2,000 clients who bought Veryfine products. Veryfine's products are also distributed by Food & Spirits throughout the Caribbean.

24. Veryfine has been running television commercials in Puerto Rico since at least 1989. Its $175,000 advertising budget actually bought, through discounts obtained by Food & Spirits, approximately $300,000–$400,000 of television advertising.

25. Veryfine's sales for January through June 1992 were down approximately 8% as compared to the same period in 1991. This is attributed to increased costs of Veryfine's products, increased competition in general, and the introduction of the Coloso products. Coloso sells wholesale for approximately $10.50 per case. Both products generally sell for less than $1.00 per bottle, with Veryfine's products being more expensive than Colón's. Of the 8% decline in Veryfine's sales, approximately 3% (i.e., $67,500) is attributed to the Coloso products, which look similar to Veryfine's.

26. Veryfine called as an expert witness William Kenney, a graphic designer. Kenney is a senior designer for Saleme. The founders of the firm, Joseph Saleme and Eleanor Saleme, are nationally known designers who have written classic books in the field. Eleanor Saleme is the president of the Package Design Council International.

27. Through the years, Saleme has represented a number of well-known Fortune 500 companies, including Gilette, K–Mart, Penn Tennis Balls, AMOCO, Kodak, Delco,

---

**2.** Findings 23 through 25 are based upon the trial testimony of Ms. Sandra Vincenty, a representative of Food & Spirits.

and Goodwill Industries as well as Veryfine. Extensive examples of their designs of various corporate logos and packaging of such companies were introduced at trial.

28. Saleme has won approximately 200–300 national awards through the years based upon merit selection. Included in these were a number of CLIO awards. CLIOs are generally considered to be the Oscars of the design industry. The Veryfine designs which are the subject of this suit have also won CLIO awards.

29. Kenney has created hundreds of designs and logos in his career, including the logo for the United States Trademark Association. He has also designed the logo for Thomson & Thomson, a well-known trademark search firm located in Quincy, Massachusetts.

30. Kenney explained that there is a general philosophy of package design. The purpose of package design is to attract attention, to develop product personality, to stand out in a crowd, and avoid any type of consumer confusion. He also explained the importance of developing a unified product line.

31. Kenney described the general procedure used in designing a package. First, a designer will confer with the client. The designer will then survey and collect examples of the competition. This second process, known as a visual audit, is important to ensure that the logo eventually developed will be unique, will avoid consumer confusion, and will protect the client against claims of trademark infringement. Subsequently, conferences are held with the client again and before the final logo is decided upon, consultations are made with Thomson & Thomson, again for the purpose of avoiding any type of problem in terms of trademark infringement. Saleme uses this general approach, which is a standard approach in the design industry.

32. Kenney emphasized the importance of packaging in commerce. Packaging is important because of intense competition, and because consumers are likely to make quick purchases of products such as Veryfine's. Importance of perception for a product is also important.

33. Veryfine has been very successful in its marketing. Veryfine designers have won a number of awards including CLIOs, Package Design Council awards and other awards. Saleme's mission in 1975 for Veryfine was to develop a complete, unified corporate identity.

34. "Symbology" or "symbolized design" refer to renderings that are not realistic, but are stylized drawings that are not literal and are simplified. (Expert Testimony of Kenney).

35. Trade dress is the way a company dresses its goods for market. The Veryfine trade dress consists of a white cap with wide-throat 10 oz. bottle, white label background on a foam plastic-shield label, two-sided label, and symbolized fruit cut off on the bottom in a centered format. The Veryfine trade dress is successful because it is award-winning, there has been a tremendous increase in sales, and it is one of the best known juices in the country.

36. The Coloso labels referred to in the complaint were intentionally copied from the Veryfine labels. The general overall similarity of the two parties' labels is remarkable, especially when compared to the competition. Such as the white cap, same shape of bottle, white background, and centered format. In particular the orange and pineapple blossoms on the respective labels are virtually identical, because the blossoms do not compare with those naturally on the fruit. When the Veryfine name was placed over the Coloso fruit drawings in Court the Coloso bottles then looked virtually identical to Veryfine's.

37. The labels at issue constitute a remarkable departure from the Coloso labels on its 10–oz. bottles of apple juice and fruit punch; as well as a departure from Coloso can labels, which consisted essentially of realistic photographs or photographic-like depictions of products.

38. Kenney would not have designed or approved the design of the Coloso juice labels in 1991 because they are too close to the Veryfine labels, and, for that reason, are not unique, would cause consumer confusion, and could essentially be recognized

as a Veryfine product. In terms of confusion, consumers could believe that the Coloso products were somehow affiliated with or sanctioned by Veryfine, especially in light of quick purchase decisions by consumers and the fact that the product is sold in the Caribbean as opposed to the Continental United States. By reason of the overall similarity between the Coloso products and Veryfine, the Coloso products could be somehow viewed as a "Caribbean Veryfine."

39. Veryfine also called three Food & Spirits salesmen as witnesses at trial. Edwin Vale, one of these witnesses, has been a salesman for Food & Spirits since 1984. He is based in Ponce. He is aware of the 10–oz. Coloso products at issue and has seen them on store shelves. Vale recounted a conversation with a customer in his trading area, who was the owner of a liquor store. The liquor store owner told Vale that he would no longer buy Veryfine products because he was buying Coloso instead. He stated that he was buying Coloso because it was cheaper than Veryfine, and because the Coloso labels resembled the Veryfine labels.

40. There are a number of stores in his trading area that sell both the Veryfine 10–oz. bottled juices and the Coloso 10–oz. bottled juices. The Coloso and Veryfine bottles were arranged side-by-side on the shelves and they have been made to share shelf space on occasion according to flavor. For example, Veryfine orange juice would be next to Coloso orange juice, and Veryfine grapefruit juice would be next to Coloso grapefruit juice.

41. In general customers have stopped buying or have decreased their purchases of Veryfine in the Ponce area and that said decrease coincides with the introduction of the Coloso products.

42. Felix Torres is another Food & Spirits salesman in the Ponce area whose important customer by the name of Ponce Cash–and–Carry once told him that a Veryfine juice tasting was being held in the store. This surprised Torres because he knew that Veryfine did not do any such tastings. He became curious and went to the area where the Veryfine juice tasting was taking place. He discovered that it was Coloso juices that were being tasted, specifically orange juice. He observed that after the tasting customers would take Veryfine orange juice and grapefruit juice off the shelves instead of Coloso. He also testified that the Ponce Cash–and–Carry subsequently discontinued Veryfine purchases until its stock of Coloso was extinguished. He stated that for eight or nine months the Ponce Cash–and–Carry did not purchase Veryfine. This lasted for a period of time.

43. Antonio Quintana, another Food & Spirits salesman, sells Veryfine juices in the Ponce area and is familiar with the Coloso products. El Quijote Cash & Carry sells Coloso and Veryfine, both in the 10–oz. container where Veryfine has sponsored specials for customers.

44. Several months ago, Veryfine promoted grapefruit, grape, and orange juices at discounted prices at El Quijote Cash & Carry. Customers would reach the cash register of the Cash & Carry with Coloso. The salesclerk would then have to inform the customers that this was not the product on sale, and that the product on sale was Veryfine. Customers insisted that Coloso was the product on sale. The cashier would then have to point out, amidst the customer confusion, that it was Veryfine that was on sale and not Coloso.

45. Colón Brothers, Inc. is a Puerto Rico corporation founded in 1950. Its offices are in San Juan and Ponce. José Colón, the current president, has been with the company for 26 years, 15 years as president. Colón Brothers is a family-owned business that is in the food and juice distribution business. It is a small firm that employs about 45 persons. Mr. Colón is in charge of marketing.[3]

46. In 1991, Colón's total Coloso line sales were $11.8 million. From April 1, 1991 until April 30, 1992, Colón's sales of the five Coloso drinks at issue totaled $446,000. This consisted of $396,000 from

---

**3.** Findings 45 through 60 are based on the trial testimony of Mr. José Colón.

April 1, 1991 through December 31, 1991, $37,000 from January 1, 1992 through April 30, 1992, and $9,000 for the months of May and June, 1992.

47. In 1991, Colón spent $150,000 advertising all Coloso products. This included a $46,000 advertising campaign to introduce the 10–oz. products at issue.

48. Through the years, Colón has sold canned meats, canned fish, canned vegetables, and canned juices. The sale of canned juices represents approximately one third of its total sales in the Coloso line. Colón sells Coloso juice in various sizes of cans— 7.1–oz., 12–oz., and 46–oz. All canned juices have been sold under the Coloso name with realistic or photographic-like labels depicting the types of juice being sold. Canned juices are the largest percentage of the total Colón sales.

49. From 1984 to 1989, Colón sold apple juice in 10–oz. bottles under the Coloso name, but with a different bottle shape which used a screw-cap top. In 1989, Colón switched to the wide-throat bottle that it is currently using, and added fruit punch to its 10–oz. bottle line. The new labels were different than the labels used on the former apple juice bottles, were different than the style of realistic, photographic labels used on Coloso cans, and were different than the labels developed in 1991 that are subject of this action. The labels on the apple and fruit juice bottles are the same today as in 1989. Colón sold no other juices or juice drinks in bottles in 1989. It was Mr. Colón's decision to market these two 10–oz. bottled juice drinks.

50. When Colón went into the 10–oz. plastic-shield bottle for apple and fruit juice in May 1989, Mr. Colón knew that Veryfine sold its juices in those types of bottles as well.

51. In the latter part of 1990, Mr. Colón decided to expand his company's line of 10–oz. juice and juice drinks to include orange juice, pineapple juice, grapefruit juice, orange pineapple juice, and guava punch. Colón had been selling all of these juices (except guava punch) for 40 years in cans, and he wanted to build on his company's reputation in the 7.1–oz. can market.

52. In late 1990, Mr. Colón went to the Skelley advertising agency in San Juan to request labels for the new products. This agency had previously designed the apple and fruit punch labels that had been introduced in 1989. By this time, however, Mr. Skelley, the founder of the advertising agency, had died, and his son had taken over the firm. The son (Mr. Skelley, Jr.) was not a graphic designer, and instead had an extensive background in television.

53. Mr. Colón met with Mr. Skelley, Jr. for about half an hour. Weeks later, Mr. Skelley, Jr. produced drawings for Mr. Colón's review and Mr. Colón accepted them. No changes were made and this was the first time the white labels were used. The labels were different than the previously designed Coloso apple juice and fruit drink labels.

54. Mr. Colón said at trial, in response to questions by Veryfine's counsel, that he has no drawings that were given to him by Mr. Skelley, Jr., no cancelled checks for monies paid to him, no correspondence with him, and no invoices from him.

55. Mr. Colón obtained no legal advice on the use of these labels and he did not register any of these 10–oz. labels anywhere. No "R" or "TM" appears on any of the labels. These five flavors appeared on the market in April 1991, without any changes being made by Colón.

56. Colón wants to sell everywhere in Puerto Rico, and wants to expand to 16–oz. and 32–oz. bottles. It mostly sells in small grocery stores. The Coloso products' price range is $0.43–$0.60 per bottle, and Veryfine costs more. Veryfine and Coloso sell in the same stores, and both sell only in a single-serve offering.

57. Veryfine, Ocean Spray, Food Club, and Ritchie (all competitors of Colón's) were selling in 10–oz. bottles before Colón entered the market. Because Veryfine is sold almost everywhere in Puerto Rico, Colón was aware of Veryfine sales over two years ago. When he started his new line of the five products at issue in 1991, Mr. Colón knew that his competitors included Veryfine.

58. In 1991, Colón embarked upon an advertising campaign in connection with the introduction of the 10–oz. juices. Colón advertised in magazines, flyers, radio campaign, and newspapers as well. He also hired an advertising agency which prepared a report in April 1991. The report stated that the 10–oz. juice drink market was very competitive and that competitors had various trademarks.

59. Veryfine is popular in Puerto Rico, and it has sold 525,000 cases in 1991, which represents approximately 12.6 million bottles.

60. When Colón went into the 10–oz. plastic shield bottles for apple juice and fruit punch in May 1989, Mr. Colón knew Veryfine sold its juices in those types of bottles as well.

61. Colón desires to take as much of a share of the juice business from competitors, including Veryfine, as is possible. (Testimony of Jorge Garcia).

62. The same stores sell both Coloso and Veryfine, including liquor stores, cash & carry stores, grocery stores and convenience stores. Coloso and Veryfine products have been found side-by-side on the shelves, and even intermingled and mixed up on the shelves.

63. Colón has plans to expand some of the flavors of its bottled juice line to the 16–oz. size, plastishield bottles, with the same kind of label designs in use on the 10–oz. bottles.

64. About 100 customers of Colón's 1,800 customers sell Coloso products.

65. Alejandro Córdova is the artist who designed the Coloso apple juice and fruit punch labels, as well as the five Coloso labels at issue.

66. Córdova knew of the existence of Veryfine in general, at the time he designed the labels; he did not survey the market before he designed the labels; he was generally familiar with trademark law; he did not confer with Mr. Colón about the design; both the Coloso and Veryfine labels have symbolized fruit designs. The only directive that he received was from Mr. Skelley, Jr., who advised him that the labels on the five new products should have a white background. In his opinion the Coloso labels do not look like the Veryfine label. For the facts herein stated we conclude that Córdova's opinion is unreliable. The Court does not agree with Mr. Córdova's opinion.

67. The Court notes that when Veryfine propounded requests for admissions to Colón, (which were answered under oath on or about June 18, 1992), Colón admitted the following propositions which have already been delineated as Findings of Fact in this Opinion (see plaintiff's Exhibits 18 and 19):

a. that the products at issue in this action are similar, in that both Colón and Veryfine sell 10–oz. bottles of juice and juice drinks;

b. that Veryfine advertised their 10–oz. juice and juice drink bottles on radio and television;

c. that Colón has advertised its 10–oz. juice and juice drink bottles on radio, in newspapers and magazines, and with flyers;

d. that Colón and Veryfine sell their 10–oz. juice and juice drink products to the same classes of prospective purchasers;

e. that the Veryfine trademark is a strong mark;

f. that Veryfine manufactures, bottles and sells, and licenses third parties to manufacture, bottle and sell, fruit juices and fruit-based drinks in 10–oz. and 16–oz. bottles and 11.5–oz. single-serve cans;

g. that Veryfine has sold apple juice and cider under the Veryfine brand name since at least 1919;

h. that Veryfine sells its fruit juice products throughout the United States and in selected markets worldwide, including Puerto Rico;

i. that United States sales of Veryfine products for fiscal year 1991 totalled approximately 24,500,000 cases, approximately $214,000,000 in sales;

j. that Veryfine's national distribution network supplies supermarkets, grocery stores, convenience stores, restaurants and

vending machines in a wide variety of locations for consumer purchases;

k. that since 1975, Veryfine has developed a national market recognition and reputation through extensive advertising on radio, television, newspapers, magazines, billboards and other uses of media;

l. that Veryfine's advertising expenditures for fiscal 1991 totalled approximately $4,500,000;

m. that Veryfine has marketed its juice products in 10–oz. bottles in Puerto Rico since 1983;

n. that Colón began to market the five Coloso flavors at issue in 1991;

o. that Veryfine's products are marketed in the same classes of trade in Puerto Rico as in the rest of the United States;

p. that Veryfine's sales in Puerto Rico for fiscal year 1991 were approximately 525,000 cases, or approximately $4,700,000 in sales;

q. that Veryfine's advertising expenditures in Puerto Rico for fiscal year 1991 were approximately $175,000;

r. that all Veryfine fruit juices and fruit drinks are labeled with a stylized, two-dimensional graphic design identifying a particular flavor;

s. that Colón began selling the five flavors at issue after Veryfine had been selling orange juice, grapefruit juice, pineapple-orange drink and pineapple juice in 10–oz. bottles in Puerto Rico;

t. that Veryfine has no control over the quality of what Colón sells;

u. that before commencing this action, Veryfine requested Colón to cease and desist from its use of the graphic designs depicted on the labels of the five Coloso flavors at issue;

v. that before commencing this action, Veryfine gave Colón actual notice of Veryfine's trademark registrations for its grapefruit design, orange design, pineapple-orange design and pineapple design;

w. that the Coloso 10–oz. drinks and the Veryfine 10–oz. drinks at issue all sell for approximately less than $1.00 per bottle in Puerto Rico;

x. that Veryfine's juice and juice drink products are popular in Puerto Rico;

y. that Veryfine and its validly licensed bottlers and distributors have sold fruit juices under the orange design and grapefruit design trademarks continuously throughout the United States since 1974; and

z. that Veryfine and its validly licensed bottlers and distributors have sold fruit juices and fruit juice drinks under the pineapple design and pineapple and orange design trademarks through the United States and Puerto Rico continuously since 1985.

## II. CONCLUSIONS OF LAW

### A. VERYFINE'S TRADEMARK INFRINGEMENT CLAIM.

It is well settled that a trademark right is acquired by use and not by registration, *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir.1980). However, registration "constitutes prima facie evidence of the validity of the registered mark and the owner's exclusive right to use the registered mark in commerce on the goods or services specified in the registration." *Geoffrey, Inc. v. Toys 'R Us*, 756 F.Supp. 661, 665, (D.P.R.1991) (Pieras, J.). *See also* 15 U.S.C. § 1115(a). In addition, registration places third parties on constructive notice of the registrant's claims of ownership in the registered marks. 15 U.S.C. § 1072; *Geoffrey, Inc.*, 756 F.Supp. at 665. The effect of such constructive notice "is that the use of a mark which is the same or confusingly similar to plaintiff's mark as stated in its federal registration certificate cannot be justified by a claim of coincidence, good faith or lack of knowledge on the part of a junior user." *Geoffrey, Inc.*, 756 F.Supp. at 665–666, *citing Davidoff Extension v. Davidoff Comercio E. Indus.*, 747 F.Supp. 122 (D.P.R. 1990).

Section 32(1) of The Federal Trademark Act ("The Lanham Act"), which governs claims for infringement of registered marks, provides in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or *colorable imitation* of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is *likely to cause confusion,* or to cause mistake, or to deceive or ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a) (emphasis added).

■ The Court concludes that Veryfine, as owner of its fruit design trademarks, has the right to the exclusive use of the marks and to preclude the use of similar marks by Colón and others. In this context, it must be noted that infringement does not depend upon the use of identical words or a literal copy. *Stanco, Inc. v. Mitchell,* 23 F.Supp. 205, 206 (W.D.Tex. 1937). Thus, a central issue before us is whether there exists a likelihood of confusion regarding the parties' products. To determine if there is a likelihood of confusion, courts must inquire "whether members of the purchasing public are likely to mistake defendants' products or services for plaintiff's protected products or services within the same category." *Boston Athletic Association v. Sullivan,* 867 F.2d 22, 28 (1st Cir.1989).

■ In general, trademark infringement cases involve three types of confusion. In *Playboy Centers, Inc. v. Chuckleberry Publishing, Inc.,* 486 F.Supp. 414, 419, 428 (S.D.N.Y.1980), *aff'd,* 687 F.2d 563 (2d Cir. 1982), the court identified three types. The first is simple product confusion, which occurs when consumers might purchase a defendant's infringing product thinking it was plaintiff's. The other type of confusion is that of source or sponsorship, which arises when a consumer might believe that the plaintiff had approved or sponsored the defendant's product. The third main type of confusion is known as subliminal trademark association, which exists when a defendant is able to gain a foothold in plaintiff's market by exploiting subliminal or conscious association with plaintiff's protected name, mark or trade dress. *Id.*

■ In *Boston Athletic Association,* the First Circuit held that the following eight factors should be considered in determining the likelihood of confusion:

(1) the similarity of the marks;

(2) the similarity of the goods;

(3) the relationship between the parties' channels of trade;

(4) the relationship of the parties' advertising;

(5) the classes of prospective purchasers;

(6) evidence of actual confusion;

(7) the defendant's intent in adopting its mark; and

(8) the strength of the plaintiff's mark.

867 F.2d at 29.

■ Analyzing the evidence presented at trial against the backdrop of these legal principles, the Court finds that this case presents the three types of confusion identified by Judge Sofaer in *Playboy Centers, Inc.* A discussion of the relevant factors is now appropriate.

(1) *Similarity of the Marks.* "Similarity is determined on the basis of the total effect of the designation, rather than a comparison of the individual features." *Boston Athletic Association,* 867 F.2d at 29; *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 487 (1st Cir.1981). In *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058, 1060 (2d Cir. 1979), the court, in concluding that defendant's label infringed on the trademark of Hawaiian Punch, held that the test of consumer confusion "is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression." The Court has received testimony at trial, as well as material evidence, which convinces it that the similarity between the products at issue is such that it cannot have resulted from happenstance. A comparison of the overall appearance of the Coloso fruit designs with the Veryfine fruit designs reveals a remarkable and obvious similarity which makes it likely that

consumers, in making their usually quick selections off the shelves, will be confused, particularly where the products are placed side-by-side on the shelves.

As Mr. Kenney's expert testimony elucidated, the striking resemblance between the designs is evident from Colón's appropriation of each of the major components of the Veryfine fruit designs. The general overall similarity of the two parties' labels is striking, especially when compared to the competition. Each party's design presents a two-dimensional, flat, stylized and symbolic rendition of one or two pieces of fruit displayed prominently in the lower half of each bottle. The pieces are sectioned rather than whole and are cut off at the bottom. Detailing is minimized so that the overall appearance is clearly symbolic rather than photographic. Similar or identical bright pastels against a white background are used. The leaves and blossoms on the orange and grapefruit products—which depart from their natural configuration—are strikingly similar. The placement of each element of the label (e.g., name, legal copy, UPC code, fruit design, contents, etc.) is virtually identical. The placement of the sliced fruit and their overall appearance are similar. The striking similarity between the parties' labels is further enhanced by the fact they use the same type of 10–oz. bottles and white caps.[4]

The overall appearance of the products is just as remarkable. "[T]he likeness is so striking that it is apparent that [defendant] is using a colorable imitation of [plaintiff's] name and mark." *Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1249 (4th Cir.1970). The public is likely to be confused by the similarity of the products in question—especially when compared to the labels and overall appearance of other companies' bottles and labels that were introduced at trial. A review of the competitors' bottles which were marked as trial exhibits shows that no other company has a label and overall trade dress as similar to Veryfine's as Coloso's.

The fact that Colón's bottles are marked with the "Coloso" name does not cure the harm. "The argument that the addition of defendant's house mark prevents likely confusion has been labeled a 'smoke screen' and a 'poor excuse' for a blatant infringement because customers are likely to think that the plaintiff had authorized the defendant's use of the mark." *VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*, 788 F.Supp. 648, 660 (D.P.R.1992), *citing International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir.1988). *See Home Juice Company v. Runglin Companies Inc.*, U.S.P.T.O. 1986 (second orange juice label's registration cancelled due to likelihood of confusion even though some differences). We find that the presence of the Coloso name and mark does not prevent likelihood of confusion. As in *Astra Pharmaceutical Products v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir.1983), similarity can be found even where defendant clearly marks its product with its name. See, *Edision Brothers Stores, Inc. v. National Development Group, Inc.*, No. 89–0612–Z, 1992 WL 55465, at *2, 1992 U.S. Dist. LEXIS 2839, at *6 (D.Mass., Mar. 6, 1992). ("In considering the similarity of marks, courts emphasize the dominant portion of the marks").

(2) *Similarity of the Goods.* Both Veryfine's and Coloso's products at issue are single-serve fruit juice drinks of identical or comparable flavoring. The products are sold in the same stores and are lined up and even intermingled on shelves. This results in "a strong likelihood of confusion." *Boston Athletic Association*, 867 F.2d at 30; *Davidoff Extension*, 747 F.Supp. at 131 (both parties sold cigars and smoking tobacco products).

(3–5) *Relationship Between the Parties' Channels of Trade, Relationship Between the Parties' Advertising, and Classes of Prospective Purchasers.* Traditionally, these three factors are considered together. *Boston Athletic Association*, 867 F.2d at

---

4. While the bottles and caps used by Veryfine are stock items which are not protected, the placement of the infringing labels on them certainly contributes towards a confusingly similar trade dress.

30, *Davidoff Extension*, 747 F.Supp. at 131.

Both parties' products are sold through wholesale, retail and grocery stores. Veryfine is also sold through supermarkets and vending machines. Colón has admitted that its 10-oz. juice products "are marketed in some of the same commercial establishments in which said Veryfine fruit juice products are marketed." Answer to the Complaint, par. 17. The evidence at the trial has confirmed that this element is amply satisfied here. Veryfine advertises on radio and extensively on television. Colón has advertised its juice bottles on radio, in newspapers and magazines, and with flyers. It is logical to conclude that the advertisements are geared towards the same class of potential consumers and purchasers in Puerto Rico.

There is no question here that the prospective purchasers are the same. They are drawn from the public at large. Both of the parties' products are sold through "cash and carry" establishments, convenience stores, liquor stores and grocery stores. The various juices generally sell for 50 cents to $1.00 per bottle, with Colón's products being cheaper, with a price range of 43–60 cents per bottle. This is likely to engender confusion because " '[i]nexpensive items, bought by the casual purchaser, are not likely to be bought with great care.' " *Boston Athletic Association*, 867 F.2d at 30, *quoting Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 489 (1st Cir.1981). The expert evidence presented at trial reveals that customers of this type of product ordinarily make very quick purchase decisions. In these circumstances, a considerable number of inattentive consumers will likely not give careful consideration to their purchases, since the degree of care likely to be exercised is less than that used in the purchase of more expensive items. *See, Miller Brewing Company v. Carling O'Keefe Breweries*, 452 F.Supp. 429, 448 (W.D.N.Y. 1978). The likelihood of confusion is thus greater.

Particularly applicable to the facts in this case is the Court of Appeals' view that "[t]he virtual identity between the parties' sale outlets and advertising methods, as well as the purchasing public's lack of opportunity to exercise discrimination in making such purchases, point toward a likelihood of confusion." *BAA*, 867 F.2d at 30.

■ (6) *Evidence of Actual Confusion.* Veryfine can prevail even without any evidence of actual confusion. *VMG Enterprises, Inc.*, 788 F.Supp. at 660; *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 818 (1st Cir.1987) ("A showing of actual confusion is not essential in order to find a likelihood of confusion"). As this Court has recognized, "actual confusion is not always necessary to finding likelihood of confusion." *Geoffrey, Inc.*, 756 F.Supp. at 667. Thus, "even a minimal demonstration of actual confusion reported by plaintiff's own employees supports a likelihood of confusion." *Edison Brothers Stores, Inc.*, 1992 WL 55465, at *2, 1992 U.S. Dist. LEXIS 2839, at 10, *citing Boston Athletic Association*, 867 F.2d at 31 n. 9 (anecdotal evidence suffices, surveys not required).

Nevertheless, Veryfine introduced ample evidence of actual confusion. The testimony at trial established that customers actually confused the Veryfine and Coloso products, and that one store owner stopped buying Veryfine because he thought Coloso looked like Veryfine. Even a store employee thought that Veryfine was sponsoring a juice tasting at an establishment, when the subject product of that promotional activity was Coloso. This evidence of confusion is all the more damaging given the uncontradicted evidence that the Coloso product turns cloudy relatively quickly on the shelf. Veryfine has proved actual confusion.[5]

(7) *Colón's Intent in Adopting Its Marks.* After evaluating all evidence and having observed the witnesses' demeanor at trial, the Court is convinced that Colón intentionally copied Veryfine's marks.

---

**5.** The expert testimony introduced by Veryfine, as well as the bottles themselves, lead us to conclude that all five Coloso juices at issue are likely to be confused with Veryfine. Defendant did not present sufficient evidence to refute this conclusion.

First, Veryfine's federal registration of its trademarks well before 1991 placed everyone, including Colón, on constructive notice of Veryfine's ownership of its trademarks. 15 U.S.C. § 1072. This alone can show that Colón intentionally adopted Veryfine's trademark in bad faith. *Davidoff Extension*, 747 F.Supp. at 131.

Second, the fact that the Coloso designs have not been registered allows an inference of Colón's actual knowledge of Veryfine's registrations.

Third, in November, 1991, Colón was asked by Veryfine to cease and desist from selling its infringing products. Colón refused to withdraw the product from the market and has not redesigned its labels. Said conduct establishes an intent to trade on Veryfine's goodwill, for Colón had "the affirmative duty to avoid any likelihood of confusion with plaintiff's trademark which was already federally registered and in use." *Davidoff Extension*, 747 F.Supp. at 131. Colón has admitted that one of the objectives it had when it launched its new five flavors in 10–oz. bottles was to get as much a share as possible from Veryfine's market share. Taking all evidence into account, this Court concludes that Colón intended to confuse the public when it used marks that are similar to Veryfine's and when it refused to cease and desist from selling the products displaying the marks after being asked to do so.

Fourth, the similarities in the fruit designs and overall label designs (particularly when compared to other competing products), all lead this Court to conclude that when Colón adopted its marks, Colón intended to benefit from Veryfine's success, strong mark, and consumer popularity. The fact that Colón placed its confusingly similar designs on products that are the same that Veryfine sells, through the same channels, and to the general public, also tend to establish Colón's intent to trade on Veryfine's reputation. *Boston Athletic Association*, 867 F.2d at 32.

Fifth, Mr. Kenney—a graphic designer of considerable experience, accomplishment, and ability—testified that the Coloso labels, in his opinion, were not designed independently and neutrally, but rather were copied from Veryfine's labels. The Court finds that his testimony was persuasive, well-reasoned, and compelling. Colón's actions cannot be reconciled with Mr. Kenney's authoritative and unrebutted testimony.

Sixth, Mr. Córdova's claims that he designed the labels on his own, without any input from Mr. Colón or anyone else, and that the Coloso labels do not look like Veryfine's, are not credible. His deposition testimony, when viewed against all the other evidence, is not credible. Mr. Córdova—who bears the responsibility of having designed the infringing labels—would have this Court believe that the labels do not look alike, and that any conceivable resemblance is completely coincidental. *National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.*, 532 F.Supp. 651, (W.D.Wa.1982) (testimony of defendant as to coincidence "at times strained credulity"); *Caesars World, Inc. v. Caesar's Palace*, 490 F.Supp. 818 (C.D.N.J.1980) (contentions of coincidence "lack credibility").

"The facts can only be interpreted to mean . . ." that Colón sought to profit from Veryfine's tremendous reputation, sales, and popularity. *Boston Athletic Association*, 867 F.2d at 32. In the 10–oz. juice business, if Colón was going to copy anyone, it knew it should be Veryfine. Considering all the evidence and live testimony at trial, the Court concludes that is what Colón intended, and that is what it did.

■ (8) *Strength of Veryfine's Mark.* There can be no dispute about the fact that Veryfine's mark is a very strong one. Its fruit designs have been registered and used in commerce continuously for many years. Its worldwide sales are in the hundreds of millions of dollars per year. Its Puerto Rico sales exceeded $4 million in 1991. Veryfine is widely advertised in Puerto Rico; its advertising budget for Puerto Rico in 1991 approximated $175,000. Veryfine has protected its strong mark on previous occasions when it has successfully asked infringing competitors to cease and desist from their conduct. The evidence

shows that Veryfine's marks are well known. Indeed, Colón effectively concedes that Veryfine's mark is a strong one. As a strong mark, it is entitled to broader protection against infringement. *Boston Athletic Association,* 867 F.2d at 32; *Volkswagenwerk Aktiengesellschaft,* 814 F.2d 812, 819; *Geoffrey, Inc.,* 756 F.Supp. at 667.

Colón's contention that minor differences between the current appearance of the Veryfine marks and the trademark drawings of the marks set forth in each registration certificate should cause the Court to somehow treat the marks as being new and therefore not covered by the registrations has no legal or factual justification.

■ Colón appears to be arguing, without explicitly stating, and despite both its admitting to the ownership of Veryfine's registrations (*see* Answer at par. 12), two of which have become incontestable, and its failure to set forth abandonment as an affirmative defense (*see Bunte Bros. v. Standard Chocolates,* 45 F.Supp. 478, 480 (D.Ma.1942) (burden is on defendant to prove abandonment)), that these minor variations either resulted in the abandonment of Veryfine's registration and common-law rights in the original forms, or that the changes prevent Veryfine from claiming the dates of first use cited in each registration. However, "neither of these legal results will flow if the new form of the mark still creates the same commercial impression as did the old form." *See, Trademarks and Unfair Competition* § 17:10 at 785. "The law permits a user who changes the form of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create the same, continuing commercial impression." *Dreyfus Fund v. Royal Bank of Canada,* 525 F.Supp. 1108, 1115 (S.D.N.Y. 1981) (modernization of depiction of a lion into more stylized drawing from earlier, more realistic versions did not constitute abandonment). Where the distinctive character of the mark is not changed, the mark is, in effect, the same and the rights obtained by virtue of the earlier use of the prior form inure to the later form. *Ilco*

*Corp. v. Ideal Secur. Hardware Corp.,* 527 F.2d 1221, 1224 (C.C.P.A.1976) (different commercial impression found on the facts).

The "changes" cited by Colón are, at best, trivial: the appearance of thin white line separations to the different sections of each orange and grapefruit, a slightly different position of the pineapple behind the orange in the pineapple orange design, and minor color changes in part of an orange section and pineapple rind. The basic, overall commercial impression remains precisely the same, and the differences are apparent only upon a painstakingly careful comparison of the forms of the marks. Thus, the Veryfine marks are clearly protected by their ongoing valid registrations:

> Use of a trademark in a slightly different form than that shown in a federal registration does not constitute abandonment. As one court stated: "The law seems to be that as long as the new mark is closely related to the old, the old mark's registration protects the new one as well."

*Trademarks and Unfair Competition,* § 17:10 at 787, *citing Xerox Corp. v. Litton Educational Publishing, Inc.* (1971, TMTAB) 169 USPQ 750; *Puritan Sportswear Corp. v. Shure,* 307 F.Supp. 377, (W.D.Pa.1969); and *Li'l Red Barn, Inc. v. Red Barn System, Inc.,* 322 F.Supp. 98, (N.D.Ind.1970), *aff'd per curiam* 174 U.S.P.Q. 193 (7th Cir.1972).

The courts' recognition of the dynamic, changing nature of trademarks in commerce is a reflection of the treatment of trademark registration applications and maintenance under The Lanham Act by the U.S. Patent and Trademark Office (the "PTO"). While the drawing submitted with the application for a mark need only be a substantial, and not perfectly exact, reproduction, the PTO further recognizes that once in commerce trademarks do not exist in a static environment and that they are constantly affected by changing social conditions and the need for redesign and updating of packaging. *See, Trademark Manual of Examining Procedure,* § 1607.-02. The "TMEP," which is the PTO's official guide for its examiners, states that an applicant can amend any registration, pro-

vided that the amendment does not alter materially the character of the mark.

The TMEP states further that a means is available, although its use is not compulsory, by which registrants may keep the form of their registered marks in accord with the form of such marks in use, provided the change is not a material one, without filing a new application with each change. *See,* TMEP § 1607.02. Section 1607.02(a) of the TMEP states that in order to qualify for amendment, a modified mark must contain what is the essence of the original mark, and the new form must create the impression of being essentially the same mark.

The same standard of material alteration is applied to the examination of a mark in connection with a registrant's Section 8 affidavit, which is filed between the fifth and sixth years following the date of registration to confirm continued use in commerce. Mere changes in background or styling, or modernization do not ordinarily produce a material alteration such as would result in refusal of the affidavit. *See,* TMEP § 1603.09.

"The point is that the mark specimen submitted with a Section 8 affidavit need not be identical with the registered mark. If the mark as currently used contains the dominant portion of the registered mark or creates the same commercial impression, then such use should be acceptable for a Section 8 affidavit." *Trademarks and Unfair Competition,* § 19.45 at 992. Veryfine has submitted such affidavits as well as the additional required affidavits under 15 U.S.C. § 1065 for its grapefruit and orange designs and those marks are thus incontestable. Accordingly, Colón's argument on this score is rejected.

## B. VERYFINE'S UNFAIR COMPETITION/TRADE DRESS CLAIM UNDER THE LANHAM ACT.

In addition to trademark infringement, Veryfine asserts a charge of unfair competition and false designation of origin in violation of Section 43(a) of The Lanham Act. Section 43(a) provides:

(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) Is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person.

15 U.S.C. § 1125(a).

▪ The basis for an action under Section 43(a) is use of a mark which, once again, is likely to cause confusion or to deceive purchasers concerning the source of the goods. *Quabaug Rubber Co. v. Fabiano Shoe Co. Inc.,* 567 F.2d 154, 160 (1st Cir.1977). *Geoffrey, Inc.,* 756 F.Supp. at ˙667. Generally, "the same facts supporting a suit for trademark infringement will support a suit for unfair competition or false designation of origin." *Id.* at 667–68; *Jordan K. Rand, Ltd. v. Lazoff Bros. Inc.,* 537 F.Supp. 587, 597 (D.P.R.1982).

▪ In *Two Pesos, Inc. v. Taco Cabana, Inc.,* —— U.S. ——, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), the Supreme Court held that a trade dress claim requires only proof of likelihood of confusion, and that a trade dress which is inherently distinctive "is protectable under § 43(a) without a showing that it has acquired secondary meaning." The Court stated: "There is no persuasive reason to apply to trade dress a general requirement of secondary meaning which is at odds with the principles generally applicable to infringement suits under § 43(a)." Moreover, the Court cited with approval a definition of "trade dress" of a product as "essentially its total image and overall appearance." *Id.* at n. 1.

Because Veryfine has proved its trademark infringement claim, based on a likelihood of confusion as to the origin of the

Coloso fruit designs, Veryfine has also proved its trade dress claim.[6]

## C. VERYFINE'S REQUEST FOR INJUNCTIVE RELIEF.

■ In its complaint, Veryfine has prayed for the issuance of an injunction restraining Colón, its agents, servants, employees, successors and assigns, and all others acting in concert and privity with them, from infringement of Veryfine's registered trademarks, from dilution of Veryfine's trademark rights, from false designation of origin of Colón's products, from injuring Veryfine's business reputation and from unfairly competing with Veryfine. In light of the foregoing findings and conclusions, the Court is convinced that Veryfine is entitled to the injunctive relief it seeks, pursuant to 15 U.S.C. § 1116(a), which provides in its pertinent part:

> The several courts vested with jurisdiction of civil actions arising under this Chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the Court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under Section 1125(a) of this title. Any such injunction may include a provision directing the defendant to file with the Court and serve on the plaintiff, within thirty (30) days after the service on the defendant of such injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

The Court has concluded that Colón has violated the rights of Veryfine as registrant of the marks in question and that Colón has also concurred in conduct prohibited by 15 U.S.C. § 1125(a). Unless Colón is enjoined from continuing said conduct, Veryfine would continue to suffer irreparable injury. Under the circumstances, the Court cannot permit the continued violation by Colón of federal law and federal public policy. *Opticians Ass'n. of America v. Independent Opticians of America*, 920 F.2d 187 (3rd Cir.1990) (public interest favors issuance of injunction to prevent consumer confusion which, if continued, would damage the public interest).

For the reasons discussed previously, this Court has concluded that Colón's use of the five Coloso labels at issue is likely to cause consumer confusion. In addition, the evidence demonstrates that both parties' products have common channels of distribution and are sold to the same prospective purchasers. This further justifies issuance of an injunction. *American Cyanamid Co. v. Campagna Per La Farmacie in Italia S.P.A.*, 678 F.Supp. 1049 (S.D.N.Y. 1987) *aff'd*, 847 F.2d 53 (2d Cir.1988). Veryfine has shown actual confusion on the part of the public, and the Court has found that Colón's conduct has been intentional. Those factors further warrant the issuance of an injunction in this case. *Original Appalachian Artworks v. Topps Chewing Gum*, 642 F.Supp. 1031 (N.D.Ga. 1986) (injunction justified when evidence showed that defendant intentionally patterned its mark after plaintiff to take advantage of strength of plaintiff's mark and that defendant's marks were being associated with plaintiff); *American Airlines, Inc. v. A 1–800–A–M–E–R–I–C–A–N Corp.*, 622 F.Supp. 673 (D.C.Ill.1985) (injunction appropriate where defendant intended to confuse the public and there was actual confusion).

The Court of Appeals for the First Circuit has recognized the propriety of injunctive relief when the elements of infringement and unfair trade practices proven here are established. *See, Keds Corp. v. Renee Intern. Trading Corp.*, 888 F.2d 215 (1st Cir.1989); *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907 (1st Cir.1989); *Boston Athletic Association*, 867 F.2d at 22; *Hypertherm, Inc. v. Precision Prod-*

---

6. Veryfine also asserts that Colón's acts are in violation of Puerto Rico law, including 10 L.P.R.A. § 259 and the regulations promulgated thereunder. The Court finds that Colón's conduct constitutes an unfair method of competition, which is unlawful under Puerto Rico law. However, because federal law provides to Veryfine the appropriate redress, we need not restrict our ruling to an application of local law.

*ucts, Inc.,* 832 F.2d 697 (1st Cir.1987); *Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d at 812; *Camel Hair and Cashmere v. Associated Dry Goods,* 799 F.2d 6 (1st Cir.1986); *Purolator, Inc. v. EFRA Distributors, Inc.,* 687 F.2d 554 (1st Cir.1982); *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.,* 567 F.2d at 154. This Court has also awarded injunctive relief to prevent conduct akin to that involved in this case. *Davidoff Extension,* 747 F.Supp. at 122; *Geoffrey, Inc. v. Toys 'R Us,* 756 F.Supp. at 661; *Jordan K. Rand Ltd. v. Lazoff Bros., Inc.,* 537 F.Supp. at 587; *Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp.,* 770 F.Supp. 754 (D.P.R. 1991).

The Court finds that the balance of hardships favors Veryfine because, unless Colón is enjoined from "the irreparable injury that ... plaintiff has already sustained as a result of the intangible damage done to plaintiff's mark—the symbols of the reputation and goodwill it has developed throughout the years—will continue in the future." *Geoffrey Inc. v. Toys 'R Us,* 756 F.Supp. at 668. In these circumstances, there can be no question that the injury suffered by Veryfine outweighs any harm which Colón might sustain in being unable to continue marketing its 10–oz. bottled juices at issue with the offending labels and trade dress. *Breuer Elec. Mfg. Co. v. Toronado Systems of America,* 687 F.2d 182 (7th Cir.1982).

On the other hand, Colón distributes a wide variety of other products, and its total annual sales from its infringing bottles is only a small fraction of its business. Thus, "the injunctive relief sought by ... plaintiff will not close down defendants' business. It will merely require it to use a name and trade dress (or packaging) that does not cause confusion with the plaintiff's mark." *Geoffrey,* 756 F.Supp. at 661. It is possible that some element of expense will be entailed in changing marks. However, Colón's "wound, as it appears, was self-inflicted." *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d at 916. Accordingly, "plaintiff's interest in preventing the potential injury it would suffer in the future outweighs the inconvenience defendants

would experience if plaintiff's request for injunctive relief is granted." *Id.*

It bears reiteration that an injunction would be in the public interest. By its very nature, consumer confusion is contrary to the public interest. *Id.; Jordan K. Rand, Ltd. v. Lazoff Bros. Inc.,* 537 F.Supp. at 598. The injunctive relief requested would prevent further injury to the public interest. As the Court of Appeals aptly express in affirming an injunction issued by this Court, "there is a strong public interest in fair dealing ...; if commerce is to function in our capitalistic system, entrepreneurs must play by the rules." *K–Mart Corp. v. Oriental Plaza, Inc.,* 875 F.2d at 916.

■ Effective relief can only be afforded to Veryfine if Colón is prohibited from continuing to sell its 10–oz. bottled juices with infringing labels and trade dress. That, perforce, necessitates that Colón be ordered to surrender for destruction all of its inventory of the five Coloso flavors presently in existence and bottles already labelled, and any and all labels which Colón or its label supplier may have in inventory. A plaintiff has a right to the ex parte seizure of goods which infringe upon its trademarks or trade dress pursuant to the laws of unfair competition. *Pepe (U.K.) v. Ocean View Factory Outlet Corp.,* 770 F.Supp. 754, 759 (D.P.R.1991). Once the violations have been established, "this court has the right to impound articles which [infringe upon plaintiff's trademarks and trade dress] on ex parte application." *Id.* at 760. A fortiori, the parties having been fully served, an order ensuring that any and all infringing items will not find their way into commerce is mandated if this Court is to fashion adequate relief.

Therefore, the Court will enter a permanent injunction restraining Colón, its agents, servants, employees, successors and assigns, and all others acting in concert and privity with them, from infringement of Veryfine's U.S. Trademark Registrations Nos. 1,247,271; 1,486,408; and 1,491,394, from dilution of Veryfine's trademark rights, from false designation of origin of Colón's products, from injuring

Veryfine's business reputation and from unfairly competing with Veryfine. Colón will be ordered to discontinue its sales in Puerto Rico, the Caribbean and elsewhere of its 10–oz. bottle grapefruit juice, orange juice, pineapple-orange drink, pineapple juice and pineapple-guava drink immediately, as well as to proceed to destroy all products, name plates, labels, packaging, advertisements and other materials constituting infringement of Veryfine's designation of origin and its trademark registration rights, and otherwise relating to the five Coloso labels at issue.

### D. VERYFINE'S REQUEST FOR MONETARY RELIEF.

■■■■ Veryfine proved at trial that Colón deliberately violated Veryfine's trademarks rights, and deliberately engaged in unfair competition and violation of the Lanham Act. Accordingly, pursuant to 15 U.S.C. § 1117(a), Veryfine is entitled to monetary relief:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the Plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost of deduction claimed.

Where, as here, a defendant is guilty of bad faith or willful infringement, an award to the plaintiff of the defendant's profits is appropriate. *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 707 (2d Cir.1970), cert. denied, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971); *Maltina Corp. v. Cawy Bottling Company*, 613 F.2d 582, 585 (5th Cir.1980). In determining the entitlement to defendant's profits

as an element of monetary relief, the plaintiff need not demonstrate any actual damages in order to obtain an accounting for profits. *Playboy Enterprises, Inc. v. P.K. Sorren Export Co.*, 546 F.Supp. 987, 997 (S.D.Fla.1982). The plaintiff is only required to prove defendant's sales; defendant must prove all elements of cost of deductions claimed, if any. 15 U.S.C. § 1117(a).

■■■■ The evidence has convinced the Court that Colón deliberately and willfully infringed upon Veryfine's trademarks and trade dress, and that it has suffered damages as a result. Moreover, Veryfine proved that it gave Colón over ninety (90) days to cease and desist from its activities. Significantly, Veryfine's cease and desist letter to Colón made it indisputably clear that if Colón would simply change its labels, there would be no law suit, no requests for any money, and that the matter would simply end with a change of labels. Colón knew that there was a possibility it would have to change its labels, because Mr. Colón inquired of Owens–Illinois about the cost of such a change in January, 1992.

Instead of simply agreeing to change the labels and obviating this entire litigation, Colón forced Veryfine to sue, and forced Veryfine to pursue this litigation to conclusion. Colón must face the consequences of its actions and wrongful conduct. An award of profits and damages against Colón is proper because it has exhibited:

> an aura of indifference to plaintiff's rights and a smug willingness to determine unilaterally that the goodwill plaintiff has sought to foster could safely be treated as a nullity.

*W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970); *Polo Fashions, Inc. v. Magic Trimmings, Inc.*, 603 F.Supp. 13, 19 (S.D.Fla.1984).

As we held in *Davidoff Extension*, citing *Playboy Enterprises, Inc.*, "our primary task is to make violations of the Lanham Act unprofitable to the infringing party." 747 F.Supp. at 133. Contrary to the situation in the above cited case, Veryfine has proven that Colón's sales from the infring-

ing products total $446,000. In assessing profits, once defendant's sales have been proven, the burden is then on the defendant to demonstrate any costs. 15 U.S.C. § 1117(a); *Maltina Corp.,* 613 F.2d at 586; *Polo Fashions Inc. v. Rabanne,* 661 F.Supp. 89, 97 (S.D.Fla.1986). Colón has presented no evidence at trial as to the cost of its sales. Having forced Veryfine to file this suit and litigate it through trial, knowing that it had no legitimate explanation or defense and that it has intentionally copied Veryfine's trademark, it is appropriate to force Colón to pay over to Veryfine all that it has made off of the sale of its infringing products, since allowing Colón to retain these would reward Colón for its illegal acts. *Id.* at 98.

Additionally, Veryfine is entitled to an award for the damages sustained by it. The Court finds that Veryfine is entitled to $67,500.00, representing the 3% loss of sales during the period from January 1992 through June 1992 attributable to the infringing Coloso products.

In addition, the Lanham Act permits the Court, in its discretion, to award treble damages. Pursuant to 15 U.S.C. § 1117(a):

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the Court shall find that the amount of the recovery based on profits is either inadequate or excessive, the Court may in its discretion enter judgment for such sum as the Court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not penalty.

In considering the equities of this case, including Colón's overall total sales figures, the Court finds that the award of Colón's profits and Veryfine's damages is adequate to secure the return of profits to Veryfine, to prevent the unjust enrichment of Colón, and to deter future infringement. *Maltina Corp.,* 613 F.2d at 585; *Playboy Enterprises v. Baccarat Clothing Co., Inc.,* 692 F.2d 1272, 1274 (9th Cir.1982).

## E. INJUNCTIVE RELIEF AND AWARD.

Based on the foregoing findings of fact and conclusions of law, IT IS HEREBY ORDERED:

1. Colón Brothers, Inc. and its officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with any of them, are permanently enjoined from engaging in any of the following acts:

(a) Selling, distributing, promoting, advertising or marketing in Puerto Rico, the Caribbean and elsewhere its 10–oz. bottled juices in the grapefruit, orange, pineapple-orange, pineapple and pineapple-guava flavors bearing the existing labels or any other labels which are nearly identical to and a colorable variation of Veryfine's grapefruit design, orange design, pineapple-orange design and pineapple design registered trademarks, or any other label or trade dress confusingly similar to Veryfine's, either alone or in combination with other symbols, words, or designs, in the marketing, sale, distribution, promotion, advertising, identification of fruit juices or fruit drinks; and

(b) From using any label, trade dress, designs or trademarks in any form or manner that would tend to identify or associate the Coloso products with Veryfine's or otherwise tend to confuse the consuming public as to the source or origin of such products; and

(c) From otherwise infringing Veryfine's registered trademarks; and

(d) From otherwise engaging in unfair competition with Veryfine; and

(e) From using any colorable imitation of Veryfine's trademarks in connection with the marketing, sale, distribution, promotion, advertising, identification or any other matter in connection with its business or products; and

(f) Defendant Colón Brothers, Inc. shall immediately discontinue its sales in Puerto Rico, the Caribbean and elsewhere of its 10–oz. bottle juices in the mentioned flavors with the mentioned labels and shall immediately proceed to destroy all prod-

ucts, name plates, labels, packaging, advertisements, and other materials constituting infringement of Veryfine's rights and otherwise relating to the five Coloso labels at issue.

2. Defendant Colón Brothers, Inc. shall promptly comply with the terms of the foregoing injunction, and defendant shall be in full compliance within thirty (30) days after the entry of judgment. Within forty-five (45) days after the entry of judgment in this case, defendant shall file with the Court and serve on plaintiff's attorneys a report in writing under oath setting forth the actions taken by defendant to comply with the terms herein.

3. Defendant Colón Brothers, Inc. is hereby ordered to pay to Veryfine the amount of $513,500.00.

4. Pursuant to 15 U.S.C. § 1117, Rule 54(d) of the Federal Rules of Civil Procedure and *Davidoff Extension v. Davidoff Comercio e Indus.*, 747 F.Supp. at 122, plaintiff is awarded costs and attorneys' fees. Plaintiff is directed to submit an itemized application for costs and fees within thirty (30) days from entry of judgment.

Judgment shall be entered accordingly.

IT IS SO ORDERED.